568 P.2d 586
Joe PINO, Thomas J. Clear, Jr. and
Belarmino R. Gonzales, Petitioners,

v.

W. J. BUDWINE and W. J. Budwine,
Trustee, El Valle State Bank
Trust, Respondent.

No. 11437.

Supreme Court of New Mexico.

Aug. 24, 1977.

Rehearing Denied Sept. 9, 1977.

Mary C. Walters, Terrance L. Dolan, Albuquerque, for petitioners.

Lamb, Metzgar, Franklin & Lines, Albuquerque, for respondent.

## OPINION

SOSA, Justice.

Plaintiffs Joe Pino, Thomas Clear, Jr., and Belarmino Gonzales brought suit against W. J. Budwine individually and as trustee of the El Valle State Bank Trust for breach of trust and trover. The trial court found for the defendant. The Court of Appeals affirmed. We granted certiorari and reverse the Court of Appeals.

On December 18, 1972, plaintiffs, defendant W. J. Budwine [hereinafter Budwine] and others executed a trust indenture, forming the El Valle State Bank Trust [hereinafter Bank Trust]. The Bank Trust res consisted of 75,650 shares of stock [50.43% of the outstanding stock] in the El Valle State Bank.[1] At the same time all parties signed a buy-sell agreement which

---

1. The El Valle State Bank Trust's trustees are Anaya, Budwine, Cordova, Clear, and Padilla. Its beneficiaries, who also are the settlors, are Cordova, who contributed 1000 shares; Clear, 4300 shares; Padilla, 4000 shares; Pino, 4000 shares; Rudy Ortiz, who assigned his interest to Belarmino Gonzales, 5000 shares; Felix Moya, now his estate, 5000 shares; and the El Valle Trust, 52,350 shares. Mike Anaya contributed 20,000 shares, and Budwine, 32,350 shares of the El Valle State Bank to the El Valle Trust, which is separate from the El Valle State Bank Trust but a settlor-beneficiary thereof. Anaya and Budwine are trustees of the El Valle Trust. Thus, Budwine, as the major contributor to the El Valle Trust, had majority interest in the El Valle State Bank Trust, and by the terms of that trust, controlled the El Valle Bank.

provided for, *inter alia,* buying the interest of a defaulting party. On April 17, 1973, the shares of the bank held by the Bank Trust were pledged to secure a one-year loan of $365,662.50 from the American Bank of Commerce [hereinafter ABC] of El Paso, Texas. A sixty-day note was executed on April 17, 1974, and was renewed for one year or on demand on June 16, 1974. Because of the difficulties and delays in repayment, ABC, in a letter dated September 17 and addressed to Budwine as secretary of the Bank Trust, informed him that it did not wish to renew the loan and requested that he try to borrow the funds elsewhere. On October 9, 1974, ABC sent individual letters to Pino, Clear, and Budwine, demanding immediate payment.

On December 18, 1974, Budwine wrote a letter to Pino, Clear, Gonzales, Padilla, and Anaya, again demanding payment of all principal and interest. Budwine also stated that if payment was not made by December 24, he would buy out all their interests pursuant to the buy-sell agreement. Thereafter some payments of interest and principal were made by the various parties, but these payments were partial and infrequent.

On May 20, 1975, ABC called the note due, to be paid on June 10; notice apparently was given to all parties. On July 31, 1975, ABC demanded immediate payment from Budwine as guarantor of the $225,000 plus interest due. On August 1, 1975, Budwine paid the $225,000 plus $13,493.49 in interest to ABC, and in return he received the promissory note and the 75,650 shares of stock (represented by stock certificate number 513). On October 3, Budwine wrote to the plaintiffs and Padilla, demanding that each party pay his proportionate share of the principal plus interest by October 10 in order to preserve his interest in the Bank Trust, or Budwine would succeed to those interests pursuant to the buy-sell agreement. None of the parties paid his proportionate share.

On October 10, 1975, plaintiffs filed their complaint, seeking to enjoin Budwine from altering the existing interests in the Bank Trust, which the trial court temporarily agreed to by order on October 21. On April 13, 1976, a hearing on the merits was held, and on June 2 the trial court entered judgment for Budwine.

On appeal plaintiffs argue that the trial court erred in failing to find that Budwine breached his fiduciary duties to them and the Bank Trust. Plaintiffs argue that Budwine breached his duty of loyalty by failing to tell them of ABC's July 31 demand, that Budwine pledged his and their shares to secure the loan which in effect purchased their interest, and that Budwine failed to provide them with an accounting on demand to determine their obligations. Budwine argues that pursuant to the buy-sell agreement his actions were proper and no breach of any fiduciary duty occurred, and that his actions were necessary to protect the El Valle Trust and his own personal credit rating.

The decisive issue is whether Budwine's actions on July 31 and August 1 constituted a breach of the fiduciary duty of loyalty. Those actions were the following. After ABC's July 31 demand upon him personally, Budwine flew to Lubbock, Texas. There he arranged a loan for $225,000 from the Lubbock National Bank, and as security therefor Budwine stated he would deliver stock certificate number 513 representing the 75,650 shares of stock in the El Valle State Bank. He then flew to El Paso and paid off the ABC note. Thereafter he flew to Albuquerque, picked up the stock certificate, and delivered it to the Lubbock National Bank as promised on August 1. About two months later on October 3 Budwine, in a letter to each plaintiff, demanded payment of principal and interest in order for them to retain their interest in the Bank Trust. Even at this point these parties were not fully informed of Budwine's July 31 and August 1 transactions.

Paragraph *X* of the buy-sell agreement bears directly upon Budwine's authority to buy out defaulting parties to the Bank Trust. It provides:

It is understood and agreed that certain of the stocks constituting the trust

estate have been pledged by the Trustees to secure the payment of certain promissory notes and any renewals and extensions thereof executed by certain of the settlors of said trust representing purchase money for those certain shares of stock, and it is agreed that in the event any Investor shall default in the payment of any promissory note or any portion thereof for which such Investor is liable and such defaulting Investor is unable to obtain within five (5) days after such default occurs a bona fide offer for the sale of his interest in said Trust and Stock as hereinabove provided for sums sufficient to satisfy such outstanding unpaid promissory note upon which default has occurred, then any or all of the other Investors, whether or not their stock has been pledged to secure a purchase money note, may cure such default and proceed to satisfy said unpaid promissory note in full and such Investor or Investors satisfying said default shall thereupon succeed to the interest of the defaulting Investor in said Trust and Stock in the same proportions that said Investor or Investors satisfy such defaulted promissory note without payment to the defaulting Investor of any sums for his interest, provided that any Investor shall be entitled, if he so elects, to satisfy such defaulted promissory note in the same proportion and by the use of such formula as such Investor would be entitled to purchase interest in the Trust and Stock offered for sale under Paragraph II hereof. Upon any or all of the other Investors satisfying such default, the defaulting Investor must and will immediately without receiving any payment therefor execute assignments of his interest in the Trust and Stock to each of such Investors in the same proportions as said Investors satisfy said promissory note in default.

By its terms paragraph *X* merely provides a method for the non-defaulting party or parties to cure any default on the promissory note by paying for the amount due and then succeeding to the defaulting party's interest.

Plaintiffs argue that the duty of loyalty imposed upon Budwine as a trustee called for full disclosure of and good faith. in the Lubbock transactions. It is undisputed that plaintiffs did not receive notice that Budwine had been called upon personally as a guarantor by ABC to pay off the loan. Plaintiffs also did not receive notice that Budwine had refinanced the loan in Lubbock. These actions in themselves perhaps are not sufficient to be deemed a breach of the duty of loyalty, particularly since all parties knew the promissory note to be in default, no one did anything constructive to remedy the situation, and all had received notice in Budwine's December 18 letter that he planned to buy them out. What is a breach of the duty of loyalty is that Budwine used the other parties' shares of stock to secure his personal loan in Lubbock, rather than just using his 32,350 shares plus whatever other assets he might have needed. So, when the time came for the other parties to pay Budwine pursuant to his October 3 demand letter, they had no stock with which to collateralize their loans, and apparently they had no other source of funds to otherwise repay Budwine. By merely setting up the refinancing in Lubbock, with the other parties' shares used in part as collateral, Budwine succeeded to all of the shares in the Bank Trust. Such actions by a trustee, and his silence as to how he managed to refinance the loan, in our opinion, fall far short of his duty as trustee to the beneficiaries. A trust relationship imposes stringent and high standards of conduct upon the trustee. Cf. *Iriart v. Johnson,* 75 N.M. 745, 411 P.2d 226 (1965); 2 A. Scott, Law of Trusts § 170 (3d ed. 1967); 76 Am.Jur.2d Trusts §§ 315–24 (1975). Budwine either should have secured refinancing with his own assets or money, or, since he used the other parties' stock to secure the loan, he at most could demand that the other parties agree to pledge their stock and co-guarantee the Lubbock loan.

The decisions of the Court of Appeals and the trial court are reversed, with instructions to order an accounting to determine the proportionate liabilities of all the parties for their share of the accrued and paid

interest on the El Paso and Lubbock loans. Each party is to tender payment of their respective share of the accrued and paid interest to date to the payor of that interest debt within a reasonable time after the accounting, the time to be determined by the trial court. Contingent on each party pledging his individual stock interest in the trust as collateral for the Lubbock loan and personally co-guaranteeing the Lubbock loan, all parties shall be reinstated to their former respective interests. If any party is unable or unwilling to tender payment and retain his interest pursuant to this decree, then the terms of the buy-sell agreement contained in the trust instrument shall govern the buy-out.

McMANUS, C. J. and FEDERICI, J., concur.

EASLEY and PAYNE, JJ., dissenting.