James Michael PAULEY, Individually and as Next Friend and Custodial Parent of Michael Ryan Pauley, a Minor, Appellant,

v.

ANCHORAGE SCHOOL DISTRICT and James O. Graham, Appellees.

No. S–9213.

Supreme Court of Alaska.

Oct. 5, 2001.

James Pauley, pro se, Anchorage.

Howard S. Trickey, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellees.

Before MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

MATTHEWS, Justice.

The question presented in this case is whether a school principal who released a child to his mother a few days in advance of the mother's Christmas vacation visitation rights is protected by the doctrine of qualified official immunity from a suit by the father. We answer in the affirmative because the conditions for the application of the doctrine are satisfied.

Custody of Michael Pauley has been disputed by his divorced parents, James and Teri Pauley, since 1989. In 1990 James and Teri stipulated that both parents would have joint legal custody, but James would have primary physical custody. Michael would live with James during the school year, but was to visit Teri for summer and Christmas vacations.

On August 2, 1994, the superior court ordered a modification, granting sole legal custody to James, while maintaining the visitation schedule described above.

In the fall of 1994, concerned about the possibility that Teri might attempt to abduct Michael, James contacted Michael's school principal, James Graham. Graham requested and James sent a copy of the August 1994 custody order. On November 23, 1994, the superior court stayed enforcement of this order, pending the investigation by Alaska and Washington agencies of allegations made by Teri regarding James's conduct toward Michael.

On December 13, 1994, Graham called James and told him that Teri was at the school to pick up Michael for Christmas visitation. James expressed his opposition to her picking up Michael, noting that it was not yet Christmas vacation. Friday, December 16, 1994, was the last school day before the Christmas recess. Teri was accompanied by an Anchorage police officer. Graham verified Teri's identity by examining her identification and requesting verification by the police officer. Graham possessed a copy of the August 2, 1994 order, which ratified the previously stipulated visitation without specifying the terms of such visitation. Teri produced a copy of the original 1990 stipulation granting her Christmas visitation. Following discussion with the police officer regarding whether the school could release Michael to Teri, Graham permitted Michael to leave school with Teri.

Teri refused to return Michael to James following Christmas vacation. The superior court revoked its stay on January 24, 1995, and ordered that Michael be returned to James. James ultimately had to petition for a writ of assistance in Washington, and was not able to secure Michael's return until April 28, 1995.

On September 12, 1996, James filed a tort claim on behalf of himself and Michael, against the Anchorage School District and Graham (hereinafter "the District"). In his complaint, James sought damages, alleging that Graham's release of Michael to Teri was negligent and constituted intentional interference with James's custodial rights.

The District moved for summary judgment against James on several grounds, including a claim that its conduct was protected by the doctrine of qualified immunity. The superior court granted the District's motion and this appeal followed.

Under AS 09.65.070(d)(2) tort actions may not be brought against a municipality or municipal employees if the claim "is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved is abused." This statute expresses a type of official immunity. "For purposes of official immunity, 'discretionary' actions are those that require 'personal deliberation, decision and judgment.' "[1]

---

1. *Samaniego v. City of Kodiak*, 2 P.3d 78, 83 (Alaska 2000) (quoting *Aspen Exploration Corp. v.* *Sheffield*, 739 P.2d 150, 155 (Alaska 1987)).

This type of discretionary immunity differs from immunity for discretionary actions in a sovereign immunity context. In the latter context the usual inquiry is whether the act in question should be regarded as operational, and thus not immune, or policy based, and thus immune.[2] Further, while discretionary function immunity for sovereign immunity purposes is not qualified, discretionary function official immunity is qualified.[3] "Under a rule of qualified immunity, a public official is shielded from liability only when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt."[4]

 Graham's acts in permitting Michael to be taken from school by his mother were clearly discretionary in character.[5] Graham acted with deliberation and made a considered judgment after calling James, verifying Teri's identification, discussing the matter with the police officer, and reviewing the court documents that Teri had in her possession. It is also clear that Graham's actions were in no sense malicious, corrupt, or taken in bad faith.[6] Therefore, both Graham and the Anchorage School District were protected by qualified immunity and this case was properly dismissed.

2. *See Aspen Exploration,* 739 P.2d at 155.

3. *See id.* at 157–58.

4. *Id.* at 158. Where it is alleged that an official has violated a statute, qualified immunity may be overcome "if the officials have violated 'clearly established' law, unless the officials can prove that they non-negligently were not aware of the law." *Integrated Resources Equity Corp. v. Fairbanks North Star Borough,* 799 P.2d 295, 301 (Alaska 1990). In claims of excessive force brought against a police officer qualified immunity will be sustained if "a reasonable official could have believed the challenged conduct was lawful in light of clearly established law and the facts of the case." *Samaniego,* 2 P.3d at 84 (quoting *Mathis v. Sauser,* 942 P.2d 1117, 1125 (Alaska 1997)).

5. A similar decision was found discretionary in *Tango v. Tulevech,* 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983), where a probation department supervisor authorized the release of children to their mother over their father's protest. There the court stated, the

Our disposition based on this issue makes it unnecessary to discuss the other points raised in this appeal.

AFFIRMED.

FABE, Chief Justice, and CARPENETI, Justice, not participating.

defendant ... conferred with the parents and the children, she inspected the documents presented and examined the children for signs of abuse, and she necessarily exercised judgment as to whether the ... action was appropriate.... But even if her ultimate determination was incorrect, she is immune from suit because she acted within the scope of her discretionary authority....
*Id.* at 186.

6. James affied in opposition to the motion for summary judgment that Graham did not act reasonably and, despite James's concerns, "decided to do his own thing, in violation of some of the School District's very own policy and procedures." James does not explain what the policy and procedures he mentions are. The claim that Graham acted unreasonably and not in accordance with James's wishes does not raise genuine issues of material fact as to whether the "good faith/not malicious or corrupt" standard has been satisfied.