Susan TRAPP, Appellant,

v.

STATE of Alaska, Office of Public
Advocacy, Appellee.

No. S–10043.

Supreme Court of Alaska.

Aug. 30, 2002.

Ethan G. Schutt, Dorsey & Whitney LLP, Anchorage, for Appellant.

Venable Vermont, Jr., Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

The question in this case is whether a conservator is shielded by absolute quasi-judicial immunity from claims asserted by her ward. We answer "no" because the conservatorship statute permits such claims.

**Facts and Proceedings**

In 1995 the superior court found Susan Trapp partially incapacitated and appointed the Office of Public Advocacy as her conservator. In 2000 Trapp filed suit, pro se, against OPA, claiming that its employees had intentionally or negligently withheld funds which were meant for Trapp's shelter, food,

and clothing, thereby placing her life in jeopardy; told other agencies not to help Trapp or provide her with services, thereby violating its duty of confidentiality; and defamed her. She sought both injunctive relief and monetary damages.[1]

OPA moved to dismiss the suit, asserting absolute quasi-judicial immunity with respect to all claims. Trapp opposed the motion, arguing that under the applicable statute conservators are liable to their wards for breaches of duty. The court granted OPA's motion, ruling that the statute does not provide for claims by wards against conservators.

### Arguments on Appeal

On appeal Trapp argues that absolute quasi-judicial immunity should not be afforded to conservators for the following reasons:

(1) a conservator's duties do not resemble protected judicial functions;

(2) a conservator does not perform duties intimately related to the judicial process because

(a) a conservator's duties are not performed on behalf of a court,

(b) a conservator is not a neutral third party,

(c) a conservator does not provide the court with pre-decision assistance, and

(d) a conservator acts outside the supervision and direction of the court;

(3) quasi-judicial immunity leaves wards without protection against abuses by conservators and such abuses are best deterred and prevented by an action for damages;

(4) absolute quasi-judicial immunity conflicts with the conservatorship statute; and

(5) even if there is quasi-judicial immunity generally, such immunity should not extend to intentional or malicious wrongs. OPA disputes each of these points. We address only the fourth point and conclude that it is well taken. This conclusion moots Trapp's other arguments.

### The Conservatorship Statute Precludes Absolute Immunity for Conservators

 Judges are shielded by absolute immunity from civil actions for damages arising out of their judicial acts. Judicial immunity "serves the twin purposes of protecting the finality of judgments and preserving judicial independence 'by insulating judges from vexatious actions prosecuted by disgruntled litigants.' "[2] Judicial immunity is "for the bene-

---

1. Her full complaint reads as follows:

 1. [OPA] did intentionally with hold funds which were meant for shelter, food and clothing and intern placed my life in jeopardy.
 2. That [OPA] had a responsibility as a court assigned conservator to make funds provided by social security available to me for food clothing and shelter. This was not done frequently sometimes by intent and some times simply through neglect and a cold disregard to my safety.
 3. That [OPA] did tell other agencies not to help me or provide services and illegally broke Federal laws of confidentiality.
 4. That [OPA] was intentionally verbally abuse to me and many other of their clients with a callous disregard to their disability situations. Frequently causing deep humiliation and embarrassment in front of groups of people in the front office.
 5. That [OPA] had record of how seriously ill I was, disregarded that ... and frequently caused me to be homeless by telling others how "hard I was to handle" and setting up a self fulfilling prophecy. Being homeless in Anchorage is very life threatening but

[OPA] would say it was no big deal "sleep in the streets[.]"

 6. I want to take this to court where I can prove my allegations through records of [OPA] and through witness. Even through people who work at office of public advocacy and are willing to state what kind of behavior they have seen displayed towards clients.
 7. I want to this to go to civil litigation as soon as possible: to stop the abuse and to have monetary compensation for the years of degradation by a group of people who were supposed to be in a helping role. This system of abuse almost cost me my life ... and I can prove this in court.

2. *Lythgoe v. Guinn,* 884 P.2d 1085, 1086–87 (Alaska 1994) (quoting *Forrester v. White,* 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

 If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly de-

fit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." [3]

■■■■ Judicial immunity is an absolute form of immunity; it applies "no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive. Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity." [4] Absolute judicial immunity is extended not only to judges but to others who perform duties that are sufficiently related to the judicial process. The clearest case for quasi-judicial immunity is presented in instances where some aspect of the court's adjudicative responsibility is delegated to another official such as a master or referee.[5] And in Alaska,[6] as well as in almost all other jurisdictions, neutral court-appointed experts are also shielded by absolute quasi-judicial immunity.[7] But with respect to the question

as to whether a conservator or other person appointed by a court to manage the person or property of a ward or the property of an estate enjoys absolute immunity, there is no similar unanimity.

Cases applying a rule of absolute immunity to such officials include *Cok v. Cosentino;*[8] *New Alaska Development Corp. v. Guetschow;*[9] *Mullis v. United States Bankruptcy Court for the District of Nevada;*[10] and *Mosher v. Saalfeld.*[11] Cases denying absolute immunity to such officials include *Frey v. Blanket Corp.;*[12] *Collins ex rel. Collins v. Tabet;*[13] and *Edwards v. Pena.*[14]

We have no occasion here to choose between these lines of authority, or attempt to reconcile them, because absolute immunity for conservators is, in our view, precluded by the conservatorship statute, chapter 26 of title 13 of the Alaska Statutes. The most relevant section is AS 13.26.305 which provides:

tract from independent and impartial adjudication.
*Id.* at 1087 (quoting *Forrester,* 484 U.S. at 226–27, 108 S.Ct. 538).

**3.** *Id.* (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

**4.** *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir.1989) (citations omitted). Absolute judicial immunity is to be contrasted with qualified public official immunity, under which public officials are protected from liability for their discretionary acts within the scope of their authority so long as their acts are in good faith and are neither malicious nor corrupt. *Pauley v. Anchorage Sch. Dist.,* 31 P.3d 1284, 1286 (Alaska 2001). Whether some form of qualified public official immunity applies to OPA conservators is not at issue in this appeal. We express no opinion on this question.

**5.** *See Atkinson–Baker & Assocs., Inc. v. Kolts,* 7 F.3d 1452 (9th Cir.1993) (per curiam) (special master); *Smallwood v. United States,* 358 F.Supp. 398 (E.D.Mo.1973) (referee in bankruptcy); *see also Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir.1980) (commissioner in property partition proceeding).

**6.** *Lythgoe,* 884 P.2d at 1090.

**7.** *See* cases cited in *Lythgoe,* 884 P.2d at 1087 n. 1.

**8.** 876 F.2d 1 (1st Cir.1989) (conservator).

**9.** 869 F.2d 1298 (9th Cir.1989) (court-appointed receiver).

**10.** 828 F.2d 1385 (9th Cir.1987) (bankruptcy trustee).

**11.** 589 F.2d 438 (9th Cir.1978) (per curiam) (trust officer appointed to conserve the estate of an incompetent).

**12.** 255 Neb. 100, 582 N.W.2d 336 (1998) (guardian for incapacitated person).

**13.** 111 N.M. 391, 806 P.2d 40 (1991) (guardian ad litem in role as advocate for infant). Here the court compared the guardian ad litem's liability to that of a conservator under the applicable New Mexico statute, accepting as a given conservator liability:

Fiduciaries, of course, are subject to liability to their wards for harm resulting from ordinary negligence in the discharge of their fiduciary duties; if anything, they are charged with a *higher* standard of care than are persons who do not owe fiduciary duties. *See Pino v. Budwine,* 90 N.M. 750, 568 P.2d 586 (1977); *Guerra v. New Mexico Human Servs. Dep't,* 96 N.M. 608, 633 P.2d 716 (App.1981) (guardian accepting assets of ward held to stringent and high standards of conduct).
*Id.* at 49 (emphasis in original).

**14.** 38 S.W.3d 191 (Tex.App.2001) (guardian appointed to conserve the estate of incapacitated person).

(a) Unless otherwise provided in the contract, a conservator is not individually liable on a contract properly entered into in a fiduciary capacity in the course of administration of the estate unless the conservator fails to reveal the representative capacity and identify the estate in the contract.

(b) The conservator is individually liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if personally at fault.

(c) Claims based on contracts entered into by a conservator in a fiduciary capacity, on obligations arising from ownership or control of the estate, or on torts committed in the course of administration of the estate may be asserted against the estate by proceeding against the conservator in the fiduciary capacity, whether or not the conservator is individually liable for them.

(d) Any question of liability between the estate and the conservator individually may be determined in a proceeding for accounting, surcharge, or indemnification, or other appropriate proceeding or action.

Subsection (b) explicitly makes conservators liable for torts committed in the course of administration where they are personally at fault, and subsection (d) permits claims asserted by the estate against the conservator individually to be determined either in the conservatorship proceeding or in another appropriate action.

The trial court ruled that subsection .305(b) read in the context of the other subsections of section .305 "addresses the claims of third parties as against the estate or conservator, and does not provide a cause of action for the protected person against the conservator." We do not so interpret section .305. While subsections (a) and (c) concern claims of third parties against the estate or the conservator, subsection (b) is not so limited. And subsection (d) explicitly contemplates the adjudication of claims by the estate against the conservator individually.

As to subsection (d), OPA argues that liability questions between the conservator and the ward are meant to be confined to the conservatorship proceedings and that in light of the court's power in such proceedings "there is no need to provide for tort lawsuits by the protected person against her conservator...." OPA's assertion that the court in conservatorship proceedings can fairly adjudicate a claim by the ward against her conservator is doubtless true, for the court can apply discovery and other rules of civil procedure in such proceedings in order to ensure a fair adjudication.[15] But the relevant point for the present case is not in which forum liability claims against a conservator may be adjudicated, but whether such claims can be maintained at all. Subsection .305(d) plainly allows such claims.

Other sections of the conservatorship statute also suggest that wards may pursue claims against conservators. Alaska Statute 13.26.245 provides that "[i]n the exercise of powers, a conservator shall act as fiduciary and shall observe the standards of care applicable to trustees under AS 13.36.225—13.36.290." The phrase "standard of care" is generally used to define the circumstances in which a party is liable in tort, and fiduciaries are generally liable to those whom they are charged with protecting when they breach their fiduciary duties.[16]

Alaska Statute 13.26.215 authorizes the court to require a conservator to furnish a bond "conditioned upon faithful discharge of all duties of the trust according to law."[17] Subsection .220(a)(1) provides that the conservator is jointly and severally liable with the sureties on the bond; subsection (2) of section .220(a) provides that the bond may be enforced in the court which appointed the conservator "in any proceeding pertaining to the fiduciary duties of the conservator"; and subsection (3) provides that "any interested person" can initiate a proceeding against the surety. The statutory bond requirement thus contemplates that claims for money

---

**15.** *See* Alaska R. Prob. P. 1(e).

**16.** *See Collins,* 806 P.2d at 49.

**17.** AS 13.26.215(a).

damages may be brought for breaches of fiduciary duties against the conservator and the surety by "any interested person." The statute does not suggest that the latter category does not include the ward. To the contrary, the ward is typically the person most directly affected by a breach of fiduciary duty.

Based then on the statute governing conservatorships, we conclude that conservators are not shielded by absolute quasi-judicial immunity. For this reason the judgment of the superior court is REVERSED and this case must be REMANDED for further proceedings consistent with this opinion.