ESTATE OF Elsie LOGUSAK, by its Personal Representative Frank LOGUSAK, Frank Logusak, and Fannie Logusak, Appellants,

v.

CITY OF TOGIAK, Appellee.

No. S–12533.

Supreme Court of Alaska.

June 13, 2008.

Russell L. Winner and Marc A. Jakubovic, Winner & Associates, Anchorage, and Myron Angstman, Bethel, for Appellants.

Frank S. Koziol, Anchorage, and Howard S. Trickey, Jermain, Dunnagan & Owens, Anchorage, for Appellee.

Before: MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The parents of a sixteen-year old who killed herself shortly after being released from police custody to her parents sued the city for wrongful death and negligent infliction of emotional distress. The parents alleged that police officers were negligent in failing to detain their daughter in protective custody. The superior court granted summary judgment to the city, concluding that the police officers had no duty to keep the girl in protective custody. Although the police did have a duty to act reasonably in releasing the girl to her parents, we affirm the decision of the superior court because the police did not breach this duty and because they are immune from suit.

## II. FACTS AND PROCEEDINGS

### A. Facts

Because the Logusaks appeal a superior court's grant of summary judgment, we draw all permissible factual inferences in favor of the Logusaks.[1]

Elsie Logusak grew up in Togiak, a small village where Elsie and the events of her childhood were well known to the police officers of the town. While Elsie was a child, one of her brothers died in a snow-machine accident and another brother attempted suicide by shooting himself in the shoulder.

Elsie's parents had a difficult time handling their rebellious sixteen-year old daughter. They were unable to control where Elsie lived, and she moved back and forth from her parents' house to her sister's house as she pleased. Elsie began drinking at a young age and spent at least two evenings "sobering up" in protective custody at the Togiak village jail. On previous occasions when police officers notified the Logusaks after they found Elsie drinking, the Logusaks requested that the police keep her until she sobered up. While in jail on one occasion, she talked about missing her deceased brother and she envisioned her funeral.

On September 3, 2004, the Logusaks returned to Togiak from a week-long fishing trip. During their absence, Elsie had stayed with her sister, Desiree Green, as she usually did during those weeks in the summer when her parents were away fishing. She intended to move back with her parents to live with them during the school year. On the evening of her parents' return, Elsie moved her belongings from Desiree's house to her parents' home.

Around 10 p.m., Elsie left Desiree's house. Elsie's brother, Jim, recalls that Elsie was sober at that point. At approximately 12:30 a.m., Officer William Ferris found Elsie walking along the road. He administered a breath test, which showed that Elsie had a blood alcohol level of .056 percent. Ferris called John Nick, the Togiak police department dispatcher, and asked Nick to call Elsie's parents to tell them that she had been drinking. Ferris also reported that he planned to pick up Elsie for underage drinking and curfew violation. Despite Ferris's orders, Elsie refused to get into his police car and ran away from him. Unable to follow Elsie, Ferris called Nick and asked him to notify the Logusaks that she had been drinking and had fled.

Approximately forty-five minutes after Elsie ran away, Ferris found Elsie lying on the side of Togiak's main road. Elsie was non-responsive to Ferris's attempts to wake her. Ferris then called Nick for assistance because Elsie appeared to be "passed out." Nick sent Officer Molly Gust to the scene. Gust, also unable to revive Elsie, bent down to check to see if Elsie was breathing. At that point, Gust noticed that Elsie was breathing and staring off, but still non-responsive. After the police had attempted to wake Elsie for over five minutes, Elsie responded with a smile and told them she had tripped. Both officers later testified that they believed that Elsie was playing games with them. The officers noticed "[k]ind of a strong odor" of alcohol, but did not administer a new breath test.

After reviving Elsie, the officers picked her up and walked her to the police car. Elsie could stand, but had trouble walking

1. *See Perkins v. Doyon Universal Servs., LLC,* 151 P.3d 413, 415–16 (Alaska 2006).

without assistance. Elsie told the officers that her parents were not home, and they drove her to Desiree's house. When they arrived at Desiree's house, they found that Desiree was not there. Although her brother Jim was there, they did not leave Elsie with Jim because he too was underage and he was known to consume alcohol. The officers then decided to take Elsie back to her parents' house. Gust radioed Nick and asked him to tell the Logusaks that the officers were bringing Elsie back to their house. Nick spoke with Elsie's father, Frank Logusak. Frank asked that the police keep Elsie "in the can" until she was sober. Nick replied that the police could not hold her because she was underage (even though the police had previously kept Elsie in custody while she was intoxicated).

Elsie rode with Gust to her parents' house. Elsie told Gust that she would "join her brother" if taken home to her parents. When the officers arrived at the Logusaks' house, Elsie again told the officers that she did not want to go home. Elsie then tried to run away, but tripped and fell. The officers restrained Elsie as she struggled to escape and handcuffed her arms behind her back. They together picked Elsie up by her shoulders and took her into the house. Meanwhile, Frank asked the officers if they could take Elsie to the town jail until she sobered up. Ferris again told Frank that the town jail was not an appropriate place to hold minors.

The officers removed Elsie's handcuffs and she immediately fell. She then quickly stood up and ran into her brother's bedroom. As Frank Logusak argued with Ferris about leaving Elsie at the Logusak house, Fannie Logusak said she heard scuffling and feared that Elsie might try to leave the house through the bedroom window. As Frank Logusak and Ferris tried to get the bedroom door open, Elsie shot and killed herself.

## B. Proceedings

On February 16, 2005, the Logusaks filed a suit against the City of Togiak. The Logusaks alleged claims of wrongful death and negligent infliction of emotional distress due to the Togiak officers' negligence in releasing Elsie to her parents while she was intoxicated.

The city denied all allegations and subsequently moved for summary judgment. The city argued that it had no duty to prevent Elsie's suicide because the officers did not know nor reasonably should have known that Elsie was suicidal. Togiak further asserted that it was immune under AS 09.65.070(d)(2), which provides municipalities immunity from suits based on discretionary acts.

The superior court granted the city's motion for summary judgment, finding that the city and its police officers did not owe a duty; as a result, the court declined to reach the immunity question. The Logusaks appeal this award of summary judgment.

## III. STANDARD OF REVIEW

We review a court's award of summary judgment *de novo*.[2] We will affirm a grant of summary judgment where no genuine issue of material fact exists and the "prevailing party is entitled to judgment as a matter of law, drawing all reasonable factual inferences in favor of the non-prevailing party."[3]

## IV. DISCUSSION

We first analyze whether the police officers owed Elsie a duty. In negligence cases, we treat duty as the threshold issue because "[c]onceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity."[4]

---

2. *Brannon v. Continental Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006).

3. *Perkins*, 151 P.3d at 415.

4. *Div. of Corr., Dep't of Health & Soc. Servs. v. Neakok*, 721 P.2d 1121, 1125 (Alaska 1986) (quoting *Davidson v. City of Westminster*, 32 Cal.3d 197, 185 Cal.Rptr. 252, 649 P.2d 894, 896 (1982)).

## A. Togiak Police Officers Did Not Breach Their Duty To Act Reasonably in Releasing Elsie to Her Parents.

■ The superior court awarded summary judgment to Togiak after finding that Ferris and Gust did not have a duty to keep Elsie in custody. The Logusaks appeal this finding, claiming that the police have a heightened duty to protect all persons taken into protective custody, and that therefore Ferris and Gust had a duty to protect Elsie from self-inflicted injury.

■ When determining whether there is an actionable duty of care, we first look to common law principles and statutes that may dictate such a duty.[5] The Logusaks contend this duty arises from the common law jailer and parole officer duties of care as well as statutes regulating police custody of individuals incapacitated by alcohol and of minor runaways. We are not persuaded that these common law or statutory duties apply to this case. Temporary police custody of an intoxicated minor presents a much different situation than custody of a jail detainee—where we have found a heightened duty of care due to the confinement of a person away from an environment the person knows and understands [6]—and a much different situation than release of a parolee—where we have imposed a duty based primarily on parole officers' enhanced knowledge of the behavior and habits of their parolees.[7] Instead, we look to the Alaska legislature's clear effort to address the situation before us: release of an intoxicated juvenile to her parents under AS 12.25.030. Alaska Statute 12.25.030(b)(3)(B)

provides that "a peace officer without a warrant may arrest a person when the peace officer has reasonable cause for believing that the person has violated AS 04.16.050 [the prohibition against minors consuming alcohol]; however, unless there is a lawful reason for further detention, a person who is under the age of 18 ... *shall be* cited for the offense and *released to the person's parent* ...." (Emphasis added.) The legislature recognized a heightened need to release a minor to her parents in situations where the minor is suspected to have consumed alcohol. Accordingly, we examine the police officers' actions under AS 12.25.030.[8]

■ The existence of a statute addressing the situation before us is not the end of the inquiry, however. Under the doctrine of negligence per se, we may impose a duty of care where a statute applies and certain requirements are met. In *Morris v. Farley Enterprises, Inc.,*[9] we adopted the Second Restatement of Tort's definition of negligence per se:

> The court may adopt as the standard of conduct ... the requirements of a legislative enactment ... whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is being invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results. [10]

Alaska Statute 12.25.030 serves to protect a minor arrested by peace officers by calling

---

**5.** *See DeNardo v. Corneloup,* 163 P.3d 956, 961 (Alaska 2007).

**6.** *See Joseph v. State,* 26 P.3d 459, 466 (Alaska 2001); *Kanayurak v. N. Slope Borough,* 677 P.2d 893, 897 (Alaska 1984); *Wilson v. City of Kotzebue,* 627 P.2d 623, 628 (Alaska 1981).

**7.** *Neakok,* 721 P.2d at 1126–27, *partially overruled on other grounds by State v. Cowles,* 151 P.3d 353, 363–65 (Alaska 2006).

**8.** *Compare* AS 12.25.030 *with* AS 47.12.250(a)(2)(A) (general delinquent minor detention statute providing that a police officer may release a minor to her parents if detention is not necessary to protect the minor or the community). We examine the officers' actions under AS

12.25.030 rather than AS 47.12.250, following our practice of giving precedence to specific statutes over general statutes. *Petrolane, Inc. v. Robles,* 154 P.3d 1014, 1034 (Alaska 2007) (internal citations omitted) (quoting *City of Cordova v. Medicaid Rate Comm'n, Dep't of Health & Soc. Servs., State of Alaska,* 789 P.2d 346, 352 (Alaska 1990)) ("It is a maxim of construction that specific statutes should be given precedence over more general ones.").

**9.** 661 P.2d 167 (Alaska 1983).

**10.** *Id.* at 168 (quoting RESTATEMENT (SECOND) OF TORTS § 286 (1965)).

for her detention, as opposed to release to her parents, only where the peace officers have a "lawful reason for further detention." We read into AS 12.25.030 the duty of police officers to act reasonably when releasing a detained minor to her parents. Under this statute, a police officer will have acted non-negligently where the officer reasonably believed that there was no lawful reason for further detention.

Turning to the facts of this case, it is clear that Ferris and Gust acted reasonably in releasing Elsie to her parents instead of detaining her. Under AS 12.25.030, the police officers initially properly took Elsie into custody based on their reasonable belief that Elsie had violated AS 04.16.050, a belief supported by the result of her breath test. Once the officers detained Elsie, they were then governed by AS 12.25.030, which indicated that the police must release a minor to her parents unless there is a lawful reason not to do so.

The Logusaks fail to present any facts to support their argument that there was a lawful reason to keep Elsie in custody. The only other law that Elsie violated that evening was a city curfew ordinance—a law that does not provide for detention under any circumstances. In addition, the two statutes that the Logusaks argue mandate detention, AS 47.37.170 and AS 47.10.141, are not applicable here and therefore are not lawful reasons for further detention. The former does not apply because Elsie was not "incapacitated by alcohol" as that term is defined by law.[11] Elsie was not a runaway and therefore AS 47.10.141(b)(1)(A) does not apply.

In addition to the reasonableness of the officers' actions in this particular case, general policy considerations support encouraging police officers to return a potentially suicidal minor to her parents. Putting an allegedly suicidal minor in jail, instead of returning her to her parents, runs counter to previous decisions of this court. In *Kanayurak v. North Slope Borough*, a case examining the duty of care of jailers, we overturned a lower court's grant of summary judgment to a municipality following the suicide of a detainee in the municipality's jail.[12] In reasoning that there was a genuine issue as to the duty owed by the jailer to the detainee, we relied on expert testimony that Eskimo women and incarcerated persons are particularly prone to suicide; we relied also on the fact that confinement and isolation are often factors that increase the likelihood of suicide.[13] Under *Kanayurak*, and especially in light of testimony that Elsie had previously expressed fatalistic thoughts while in jail, the police did not breach their duty in releasing Elsie to her parents.

We therefore conclude (1) that the police officers did have a duty to act reasonably in releasing Elsie to her parents and (2) that, indulging all reasonable inferences in favor of the Logusaks, the police did not breach that duty but rather acted reasonably in releasing Elsie to her parents.

### B. The Police Officers Acted Within Their Discretion and Therefore Togiak Is Immune from Suit.

■ We affirm the superior court for a second reason: Apart from the question of duty, we hold that the officers and Togiak are immune from suits of this sort.

■ Alaska Statute 09.65.070 exempts municipalities from civil liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents ... whether or not the discretion involved is abused." This statutory grant of immunity, which we previously characterized

---

**11.** Although the evidence shows that Elsie was intoxicated, she was not "incapacitated" by alcohol as defined by AS 47.37.270(11). AS 47.37.270(11) provides that "incapacitated by alcohol" means "a person who, as a result of alcohol or drugs, is unconscious or whose judgment is otherwise so impaired that the person (A) is incapable of realizing and making rational decisions with respect to the need for treatment and (B) is unable to take care of the person's basic safety or personal needs, including food, clothing, shelter, or medical care." When the police officers released Elsie to her parents, she was not unconscious and did not otherwise meet the statutory definition of "incapacitated by alcohol."

**12.** 677 P.2d 893, 897–99 (Alaska 1984).

**13.** *Id.* at 897.

as "discretionary function official immunity,"[14] is a type of qualified immunity.[15] Under this qualified immunity, "a public official is shielded from liability ... when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt."[16]

We have previously described discretionary functions as actions that require "personal deliberation, decision, and judgment."[17] In *Pauley v. Anchorage School District*, we granted immunity to a school district under AS 09.65.070 after the school released a child to his non-custodial parent.[18] In holding that the release of the child was a discretionary act, we considered, among others, the following factors: (1) the principal "acted with deliberation and made a considered judgment"; (2) the principal reviewed relevant court documents and identification presented by the non-custodial parent; and (3) the principal's actions were "in no sense malicious, corrupt, or taken in bad faith."[19] Although the facts of *Pauley* differ considerably from the events in this case, we find the analysis for classifying an act as discretionary instructive to the case at hand.

We recently clarified our test for determining whether an officer is entitled to qualified immunity for performing a discretionary act in *Sheldon v. City of Ambler*.[20] In *Sheldon* we explicitly adopted the federal immunity standard, as articulated by the United States Supreme Court in *Saucier v. Katz*, for granting discretionary function official immunity to police officers.[21] The Supreme Court, in *Saucier*, set out a two-part test for qualified immunity. In determining whether an officer is immune, a court considers (1) "whether an officer's actions were objectively reason-

able" and (2) "whether the officer might have *reasonably believed* that his actions were reasonable."[22] In *Sheldon*, we found that a city was immune from suit after a village police officer (VPO), faced with an intoxicated man posing a violent threat to the man's girlfriend and others, in an escalating emergency situation, used a "bear hug" to take the man down.[23] Injuries resulting from this "bear hug" led to the man's death.[24] Because the VPO did not reasonably know that a "bear hug" could result in death and because the act itself was not on its face excessive or egregious, we held that he had acted reasonably and that therefore the city was immune.[25]

In this situation, even drawing all factual inferences in the Logusaks' favor, the decision of the police to take Elsie home to her parents was clearly discretionary. Under the *Pauley* factors for characterizing discretionary acts—"personal deliberation, decision, and judgment"—it is manifest that the police were exercising discretion. As discussed above, Alaska law required that they release Elsie to her parents rather than retain her in custody unless there was a lawful reason not to do so. Here, there was no lawful reason not to release Elsie to her parents. Indeed, the officers' decision to release her to her parents exhibited reasoned judgment. The uncontroverted testimony shows police officers who simply tried to take an intoxicated minor to her family so they could care for her. They first drove Elsie to her sister's house so that her sister could care for her. Upon learning her sister was not home and that Elsie's parents were in town, the police declined to leave Elsie with her brother, who was an inappropriate chaperone as he was underage and known to

**14.** *Pauley v. Anchorage Sch. Dist.*, 31 P.3d 1284, 1286 (Alaska 2001).

**15.** *Id.*

**16.** *Id.* (quoting *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 158 (Alaska 1987)).

**17.** *Id.* at 1285 (quoting *Samaniego v. City of Kodiak*, 2 P.3d 78, 83 (Alaska 2000)).

**18.** *Id.* at 1285–86.

**19.** *Id.* at 1286.

**20.** 178 P.3d 459 (Alaska 2008).

**21.** *Id.* at 463 (citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

**22.** *Id.* (citing *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151) (emphasis in original).

**23.** *Id.* at 466–67.

**24.** *Id.* at 462.

**25.** *Id.* at 467.

drink, and instead drove her home so that she could be released to her parents. Even given that Elsie's parents had requested that the police detain her to control her and even assuming that the officers understood Elsie's cryptic remark about her brother to hint at suicide, there is no shred of evidence suggesting that the police's decision not to detain her was in bad faith. Without any showing of capriciousness or maliciousness, the Logusaks have failed to show that Ferris and Gust's decision was not an exercise of discretion.

We turn now to the *Sheldon* inquiry: whether the police acted reasonably in performing this discretionary act. Ferris and Gust relied on a reasonable interpretation of AS 47.37.170 that prohibited placing minors in jail and encouraged the release of intoxicated minors to their parents. They also acted pursuant to AS 12.25.030(b)(3)(B), which as noted above provides that the police must release a minor who has consumed alcohol to her parents unless there is a lawful reason for further detention. The officers followed the law and placed Elsie in the care of her parents, who would presumably be better equipped to handle Elsie. This situation thus presents an even clearer case for immunity than *Sheldon* where there were no applicable laws regulating the VPO's behavior.

The City of Togiak, therefore, is immune under discretionary function official immunity.

## V. CONCLUSION

Because the police officers acted reasonably in releasing Elsie to her parents and thus did not breach their duty to protect her, and because the police officers were immune from suit for their discretionary acts, we AFFIRM the superior court's award of summary judgment to the City of Togiak.

FABE, Chief Justice and BRYNER, Justice, not participating.