Dusty CHRISTOFFERSEN, Appellant,

v.

STATE of Alaska, COURT CUSTODY
INVESTIGATOR'S OFFICE,
Appellee.

No. S–13539.

Supreme Court of Alaska.

Nov. 5, 2010.

Dusty Christoffersen, pro se, Anchorage,
Appellant.

Laura Fox, Assistant Attorney General,
Anchorage, and Daniel S. Sullivan, Attorney
General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice,
FABE, WINFREE, CHRISTEN, and
STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

In the course of performing her duties, a court-appointed custody investigator received a police report regarding an allegation that the child whose custody was being investigated had engaged in sexual misconduct. The investigator later included this information in her custody report, but did not notify the child's parents or the Office of Children's Services at the time she received the police report. During a period of time that apparently began before the custody investigator received the police report and perhaps continued until the custody investigator issued her report, the child committed further sexual misconduct, this time against his half-sister. The child's father and stepmother filed suit against the State of Alaska for damages, arguing that the custody investigator had a duty to warn them upon learning of the child's previous misconduct. The superior court dismissed the suit on summary judgment. Because court-appointed custody investigators are entitled to absolute quasi-judicial immunity from suits arising from the performance of their duties and because that immunity extends to the State, we affirm.

## II. FACTS AND PROCEEDINGS

Mark Christoffersen married Brandi Martin and they had a son, M.C., in 1992. When the couple divorced in 1999, Brandi was awarded primary custody of M.C. and Mark was granted visitation rights. In 2001 Brandi and M.C. moved to Florida and Mark lost contact with them for several years. In March 2006 Mark filed a motion to modify the custody order, seeking primary physical custody of M.C. After the court served Mark's motion on Brandi, the two resumed contact with each other, and Mark resumed visitation with M.C. shortly thereafter. By the time Mark and M.C. were reunited, Mark had married Dusty and the couple had two young daughters.

In May 2006 Master Andrew Brown responded to Mark's motion to modify M.C.'s custody order by directing the Alaska Court System's Custody Investigator's Office (the State) to conduct an investigation and prepare a custody report. The State assigned the case to a custody investigator. The custody investigator interviewed a number of people over the course of her investigation and requested information from collateral resources, including the Anchorage Police Department (APD).

In late June 2006 APD responded to the custody investigator's information request. Included in APD's response was a report concerning an April 2006 incident in which M.C. had inappropriately touched a two-year-old girl. According to the report, M.C. admitted he had touched the child, but the child's mother did not pursue criminal charges.

The custody investigator distributed her completed report to the court, Mark, and Brandi in late October 2006. The custody report addressed a number of custodial issues, including the allegation that M.C. had inappropriately touched the young child. From this report the Christoffersens apparently learned for the first time about M.C.'s inappropriate contact with the young child.

A few days after the custody report was distributed, the Christoffersens contacted the police and told them that M.C. had sexually abused their five-year-old daughter—M.C.'s half-sister—beginning soon after he resumed visitation with Mark. During an interview with police, M.C. admitted perpetrating sexual misconduct against the girl. M.C. was subsequently adjudicated on a charge of sexual assault of a minor in the fourth degree.

In April 2008 the Christoffersens filed suit against the State, seeking ten million dollars in damages. They alleged the custody investigator violated her duty to protect their children by not warning the Christoffersens about the allegations of M.C.'s prior sexual misconduct immediately after she received the APD report. They also alleged the custody investigator violated AS 47.17.020's mandated reporting requirements by not forwarding the APD report about M.C. to the Office of Children's Services (OCS).[1] After

---

1. AS 47.17.020 requires certain classes of per- sons, including doctors, teachers, and peace offi-

the State filed its answer to the complaint, the Christoffersens filed a response adding their belief that by not notifying them or OCS as soon as she received the APD report concerning M.C.'s March 2006 misconduct, the custody investigator violated several additional statutes contained in Titles 9 and 47.[2]

The State filed two motions for summary judgment. In its first motion the State argued that (1) custody investigators are entitled to absolute quasi-judicial immunity from civil suits arising out of the performance of their duties, and (2) this immunity bars the Christoffersens's vicarious liability claim against the State. In its second motion the State argued that the custody investigator had no actionable tort duty to warn about or control M.C.'s conduct under the statutes cited by the Christoffersens, Alaska case law, or public policy. The Christoffersens filed a cross-motion for summary judgment, asserting that the custody investigator violated mandated reporting requirements.

In November 2008 the superior court granted both of the State's summary judgment motions, disposing of the Christoffersens's complaint in its entirety and denying their cross-motion for summary judgment *sub silentio.* Dusty appealed the superior court's decision; Mark did not.

## III. STANDARD OF REVIEW

 We review de novo both a grant of summary judgment[3] and the legal question of whether immunity exists as a defense to a claim.[4]

## IV. DISCUSSION

### A. Overview

This case requires us to determine whether the superior court correctly granted summary judgment to the State on the basis of either (1) absolute quasi-judicial immunity or (2) lack of an actionable tort duty. "We usually consider whether there is a tort duty before deciding sovereign immunity questions, [though] this is not always our practice."[5] We have analyzed immunity first when "doing so clarifies the public policy considerations that also bear on our duty analysis,"[6] and we do so here for that reason. We conclude that (1) a court-appointed custody investigator is entitled to absolute quasi-judicial immunity from civil suits arising from the performance of an investigation, and (2) when a custody investigator is an employee or contractor of the State, that immunity extends to the State. We therefore do not need to address the superior court's ruling on duty.

### B. Court–Appointed Custody Investigators Are Protected Under The Doctrine Of Absolute Quasi–Judicial Immunity.

 Judges are absolutely immune from liability for damages for acts performed in the exercise of their judicial functions.[7] This

---

cers, to report suspected physical, mental, or sexual abuse.

2. The Christoffersens alleged that the custody investigator violated the following statutes: AS 09.10.065 ("Commencement of actions for acts constituting sexual offenses"); AS 09.10.070 ("Action for torts, for injury to personal property, for certain statutory liabilities, and against peace officers and coroners to be brought in two years"); AS 09.15.020 ("Parents or guardian may sue for seduction of child"); AS 09.17.010 ("Noneconomic damages"); AS 09.17.020 ("Punitive damages"); AS 47.05.065 ("Legislative findings related to children"); AS 47.10.020 ("Investigation and petition"); 47.10.082 ("Health and safety of child and other considerations"); AS 47.10.092 ("Disclosure to certain public officials and employees"); and AS 47.10.093 ("Disclosure of agency records").

3. *Snyder v. Am. Legion Spenard Post No. 28,* 119 P.3d 996, 1001 (Alaska 2005) (citing *Native Vill. of Elim v. State,* 990 P.2d 1, 5 (Alaska 1999)).

4. *Greywolf v. Carroll,* 151 P.3d 1234, 1241 (Alaska 2007) (citing *State, Dep't of Transp. & Pub. Facilities v. Sanders,* 944 P.2d 453, 456 (Alaska 1997)).

5. *Kinegak v. State, Dep't of Corr.,* 129 P.3d 887, 888 (Alaska 2006) (citing *Kiokun v. State, Dep't of Pub. Safety,* 74 P.3d 209, 213 (Alaska 2003)).

6. *State, Dep't of Corr. v. Cowles,* 151 P.3d 353, 358 (Alaska 2006) (citing *Kiokun,* 74 P.3d at 213 (proceeding directly to immunity because that analysis "illustrates the public policy issues that would also bear on a duty analysis")).

7. *Trapp v. State,* 53 P.3d 1128, 1129 (Alaska 2002).

absolute judicial immunity applies "no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive. Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity." [8]

The doctrine of absolute judicial immunity extends not only to judges but to others who perform duties sufficiently related to the judicial process. [9] We have previously stated that the "clearest case for quasi-judicial immunity is presented in instances where some aspect of the court's adjudicative responsibility is delegated to another official such as a master or referee. And in Alaska, as well as in almost all other jurisdictions, neutral court-appointed experts are also shielded by absolute quasi-judicial immunity." [10]

In *Lythgoe v. Guinn*[11] we held that quasi-judicial immunity bars suit against a court-appointed custody investigator. [12] Dr. Janet Guinn, a psychologist, had been appointed in that case "to act as an independent custody investigator" and to make a custody recommendation to the court. [13] A party to the underlying child custody dispute subsequently sued Dr. Guinn, alleging that she committed negligent and intentional torts during her investigation and during the preparation of her report. [14] We held that Dr. Guinn served as an "arm of the court" and performed a function "integral to the judicial process" in her capacity as a court-appointed custody investigator,[15] qualifying her for immunity

under relevant case law. We further held that policy considerations supported granting her absolute quasi-judicial immunity. [16]

We explained that "[e]xposure to liability could deter [court-appointed experts'] acceptance of court appointments" [17] and "may affect the manner in which such court-appointed experts perform their jobs." [18] We noted that individuals appointed by the court to conduct custody investigations exercise discretionary judgment in rendering their evaluations, and that "the *sine qua non* of the exercise of such discretion is the freedom to act in an objective and independent manner." [19] If faced with the threat of personal liability for exercising that discretion, court-appointed experts would be less likely to offer "the disinterested objective opinion the court seeks." [20] Therefore we concluded that extending absolute judicial immunity to quasi-judicial officers is appropriate to prevent a professional who is delegated judicial duties to aid the court from becoming a "lightning rod for harassing litigation." [21]

Nothing distinguishes *Lythgoe* from this case. Custody investigators performing duties pursuant to their employment by or contract with the Alaska Court System's Custody Investigator's Office are quasi-judicial officers. [22] As such they are entitled to absolute quasi-judicial immunity from suits arising out of the performance of those duties. [23] Dusty nonetheless appears to contend that the custody investigator here is not immune from suit because she is not entitled

---

8. *Id.* at 1130 (quoting *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir.1989)).

9. *Id.*

10. *Id.* (internal footnotes and citations omitted).

11. 884 P.2d 1085 (Alaska 1994).

12. *Id.* at 1093.

13. *Id.* at 1086.

14. *Id.*

15. *Id.* at 1088 (quoting *Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173, 179 (1981)).

16. *Id.* at 1093.

17. *Id.* at 1089 (quoting *Lavit v. Superior Court*, 173 Ariz. 96, 839 P.2d 1141, 1144 (Ariz.App. 1992)).

18. *Id.*

19. *Id.*

20. *Id.* at 1090 (citing *LaLonde v. Eissner*, 405 Mass. 207, 539 N.E.2d 538, 541 (1989)).

21. *Id.* (quoting *Lavit*, 839 P.2d at 1144).

22. *See Ogden v. Ogden*, 39 P.3d 513, 516 (Alaska 2001) (noting that "court-appointed custody investigators are officers of the court and perform quasi-judicial functions").

23. *Lythgoe*, 884 P.2d at 1093.

to the immunity described in AS 47.17.050, which protects persons who make good-faith reports of suspected child abuse from civil or criminal liability. Although Dusty may be correct in contending that AS 47.17.050 would not immunize the custody investigator from suit in this case, the investigator is nevertheless protected by common-law quasi-judicial immunity.[24] Dusty's contention is therefore without merit.

### C. The State May Not Be Held Liable For The Conduct Of Custody Investigators Who Are Acting Through The Custody Investigator's Office And Are Shielded By Absolute Quasi–Judicial Immunity.

██ The Christoffersens named the State as the defendant in their suit, not the custody investigator herself. The Christoffersens have not alleged any separate negligence by the State. Instead they imply that the State is vicariously liable for the court-appointed custody investigator's actions.

We have not previously addressed vicarious liability within the context of absolute quasi-judicial immunity. But we have held that a government employee's official immunity from suit bars vicarious liability claims against government entities for the same conduct.[25] Other courts addressing this issue have consistently held that an employee's quasi-judicial immunity bars any vicarious liability claims brought against the employer.[26] We support this view. The policy considerations that support extending absolute

quasi-judicial immunity to court-appointed investigators acting within the scope and capacity of their appointment also support extending that same immunity to their principal, here, the State. To conclude otherwise would merely shift the threat of liability from the agent to the principal and would stifle the "disinterested objective opinion that the court seeks." [27]

We therefore hold that because the court-appointed custody investigator is absolutely immune from suits for actions performed within that capacity, the State cannot be held liable for her conduct.

## V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment in favor of the State on the ground that it is shielded by the custody investigator's absolute quasi-judicial immunity.

---

**24.** *See B.K. v. Cox,* 116 S.W.3d 351, 360–61 (Tex. App.2003) (holding that statutorily created immunity for failure to report abuse of a minor does not override common-law derived judicial immunity in the absence of statutory language explicitly doing so). AS 47.17.050 contains no statement of intent to override common-law quasi-judicial immunity.

**25.** *See Logusak v. Togiak,* 185 P.3d 103, 108–10 (Alaska 2008); *Pauley v. Anchorage Sch. Dist.,* 31 P.3d 1284, 1285–86 (Alaska 2001).

**26.** *See, e.g., Ward v. San Diego Cnty. Dep't of Soc. Servs.,* 691 F.Supp. 238, 241 (S.D.Cal.1988) ("Because plaintiff's only theory of liability against defendant ... is respondeat superior, this court also finds that [defendant] is entitled to absolute quasi-judicial immunity."); *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 647 P.2d 713,

717 (1982) (holding that under respondeat superior "if the employee has immunity from suit, it follows that the employer would also be immune" and noting "[t]he reasoning which justifies this rule is based primarily on public policy") (internal citations omitted); *S.J.S. v. Faribault Co.,* 556 N.W.2d 563, 566 (Minn.App.1996) ("The policy considerations that support extending absolute immunity to prosecutors also support extending absolute immunity vicariously to county.... [T]he threat of litigation against the county ... could deter prosecutors from vigorously and fearlessly performing their duties.") (internal citation omitted); *Reddy v. Karr,* 102 Wash.App. 742, 9 P.3d 927, 932 (2000) (holding that custody investigator's quasi-judicial immunity extended to her employer).

**27.** *Lythgoe,* 884 P.2d at 1090 (citing *LaLonde,* 539 N.E.2d at 541).