Ethel B. KELLY, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. S–13858.

Supreme Court of Alaska.

March 2, 2012.

---

Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant.

Pamela D. Weiss, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Appellant Ethel Kelly sued the Municipality of Anchorage (MOA) for negligence after she stepped into an uncovered valve box assembly pipe in a crosswalk and sustained injuries. MOA concedes that the valve box cover was missing, but denies it was responsible for this condition. MOA moved for summary judgment in the superior court on grounds that MOA had no duty to Kelly since it neither caused nor had notice of the dangerous condition; Kelly filed an opposition and cross-motion for summary judgment. The superior court granted summary judgment to MOA. Kelly appeals. Because material issues of fact exist concerning whether MOA caused the defect and whether it had constructive notice of it, we vacate the superior court's grant of summary judgment and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Ethel Kelly stepped into an uncovered valve box assembly pipe [1] (hereafter, "valve box") in the western crosswalk of the inter-

---

**1.** Valve box assembly pipes sit atop valves above the water main; they allow Anchorage Water and Wastewater Utility (AWWU) employees to control valves connected to the water distribution system. The lid cap, also referred to as a valve box cover, is approximately one inch tall, sits atop the valve box assembly pipe and is visible from the street. Gravity keeps these lids on. The pipe and lid are approximately five inches in diameter. There are approximately 30,000 valve boxes throughout Anchorage.

section at 3rd Avenue and F Street in Anchorage on May 22, 2006, suffering "[i]njuries to her knee, ankle, leg, hip, and back." Kelly had been walking with Terri Wakefield from the Anchorage Hilton, their workplace, to the employee parking garage across the street.

Wakefield reported Kelly's fall to Hilton security, and a security guard photographed the intersection containing the open valve box. Security brought Kelly into the Hilton in a wheelchair.

Kelly filed suit against MOA alleging that MOA was negligent in leaving the valve box uncovered. After answering and denying these allegations, MOA filed a motion for summary judgment in which it sought to dismiss all causes of action in Kelly's complaint. Kelly opposed the motion and filed a cross-motion for summary judgment, in which she sought a ruling that MOA was negligent as a matter of law. After briefing was complete and after oral argument, the superior court granted summary judgment to MOA and dismissed Kelly's claims with prejudice. The superior court entered final judgment on April 27, 2010, and awarded MOA attorney's fees and costs. Kelly appeals.

## III. DISCUSSION

### A. Standard Of Review

We review a grant of summary judgment de novo, "affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[2] We must determine "whether any genuine issue of material fact exists,"[3] and in so doing all factual inferences must be drawn in favor of—and the facts must be viewed in the light most favorable to—the party against whom summary judgment was granted.[4]

The moving party has the initial burden of showing by admissible evidence that there is an absence of genuine factual disputes and that it is entitled to judgment as a matter of law.[5] Once the moving party satisfies its burden, the non-moving party must produce "admissible evidence reasonably tending to dispute or contradict the movant's evidence."[6] The non-moving party may not "rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact."[7]

### B. It Was Error To Grant Summary Judgment To MOA Because Genuine Issues Of Material Fact Exist.

In order to succeed on a negligence claim, a plaintiff must prove duty, breach of duty, causation, and harm.[8] Here, Kelly claims MOA was negligent because it caused the dangerous condition (the uncovered valve box) or had notice of the condition's existence and failed to rectify it, causing her to fall and become injured.

In *Johnson v. State of Alaska*, we stated that whether the State had notice of a dangerous condition is relevant when the dangerous condition is not caused by the State; in such a case the plaintiff must establish that the State had actual or constructive notice of the dangerous condition.[9] But where a public entity itself causes a dangerous condition, proof that it was on notice is not necessary.[10] To prevail in her negligence action against MOA, Kelly therefore must show that MOA either caused the valve box lid to be left uncovered or had either actual or constructive notice of the condition. The

---

2. *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008) (citing *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007)).

3. *Nielson v. Benton*, 903 P.2d 1049, 1051–52 (Alaska 1995) (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

4. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984)).

5. *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005) (internal citations omitted).

6. *Id.* at 339.

7. *Id.*

8. *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996).

9. 636 P.2d 47, 52 (Alaska 1981).

10. *Id.*

existence of a genuine issue of material fact on any of these fronts—causation, actual notice, or constructive notice—is sufficient to preclude the award of summary judgment to MOA.

On appeal, Kelly argues that a genuine issue of material fact exists as to whether (1) MOA caused the lid to be removed; (2) MOA had actual notice of the open hole because the condition was reported to MOA after an earlier fall by another Hilton employee, Charisse Lyons; and (3) MOA had constructive notice of the uncovered valve box because it had been uncovered for a period preceding Kelly's fall and MOA "should have known about it due to the length of time it was left off." MOA argues that the testimony of Kelly's witnesses was vague, and that upon deposition these witnesses were found to lack personal knowledge of the events and conditions to which they testified.

■ Courts do not weigh evidence or witness credibility on summary judgment.[11] With regard to affidavit testimony, we have stated that "[i]f the parties choose to submit affidavits, they must be based upon personal knowledge, set forth facts that would be admissible evidence at trial and affirmatively show that the affiant is competent to testify to the matters stated."[12] We find that Kelly's witnesses produced sufficient uncontradicted testimony to raise genuine issues of material fact.

### 1. A genuine issue of material fact exists concerning whether MOA caused the valve box cover to be left open.

Kelly argues that MOA workers were responsible for the valve box being left uncovered. Another Hilton employee, Charisse Lyons, had stepped into the same uncovered valve box approximately a week before Kelly did.[13] Lyons stated that she had seen "municipal workers" in "that area." She admitted at deposition, however, that she had no reason to believe these had been MOA work-

ers beyond the fact that they wore "yellow vests," and she clarified that she had not seen them at the precise intersection where she and Kelly fell.

Lyons's affidavit, in light of her deposition testimony, does not appear to be based on personal knowledge and therefore does not establish a genuine issue of material fact regarding whether MOA caused the valve box to become uncovered.

■ James Griffin, an employee in the Hilton security department, stated that "prior to Ms. Kelly's fall, [he] also observed city workers working on the crosswalk at Third and F [streets]. The valve box cover would be removed and left off at various times during the day." At deposition, Griffin maintained that he saw workers in that intersection and that they were using a jackhammer. He again stated that "when the workers left, the cover was still open." Griffin also stated that he personally recalled fresh paint in the crosswalk where Kelly fell, and surmised that the intersection had been painted not long before the accident. Via interrogatory, MOA admitted that its employees had painted the crosswalk on the north side of the intersection, which is, however, not the intersection where Kelly fell. Griffin's testimony concerning city workers and fresh paint in the intersection is based on personal observation and suffices to raise a genuine issue of material fact concerning causation. We therefore reverse the grant of summary judgment with respect to the issue of causation and remand for further proceedings.

### 2. A genuine issue of material fact exists concerning whether MOA had constructive notice of the open valve box.

■ We stated in *Johnson v. State of Alaska* that among the factors "to be considered in a negligence action against the [S]tate for a dangerous highway condition not caused by it" is "the length of time the

---

**11.** *Meyer v. State, Dep't of Revenue, Child Support Enforcement Div., ex rel. N.G.T.,* 994 P.2d 365, 367 (Alaska 1999) (citing *Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 765 (Alaska 1987)).

**12.** *Broderick v. King's Way Assembly of God Church,* 808 P.2d 1211, 1215 (Alaska 1991).

**13.** MOA does not dispute that Lyons "stepped into the very same hole approximately a week prior to Ms. Kelly's incident. . . ."

dangerous condition existed."[14] We also stated that constructive notice is a permissible inference where the dangerous condition exists *"for such a period of time prior to the accident,* and is of such an obvious nature, that the defendant public entity, in the exercise of due care, should have discovered the condition and its dangerous character."[15] Notice may also be inferred if evidence exists of prior accidents.[16]

*Johnson* involved a railway crossing that proved dangerous to cyclists; prior to the accident at issue in that case, a series of similar accidents had occurred over a period of four years.[17] In the instant case, Lyons testified that she fell in the same uncovered valve box, and Kelly alleges that the valve box remained uncovered for at least a week before her fall. Griffin also testified that he had seen the valve box uncovered prior to Kelly's fall.

 MOA argues that one week is an insufficient period of time to support a claim of constructive notice under *Johnson.* MOA argues that the cases *Johnson* relied on regarding constructive notice all involve conditions that existed for longer than a week, sometimes years.[18] But while the dangerous condition in this case may have existed for a shorter period of time—and is known to have caused only one prior accident[19]—the length of time the dangerous condition existed, and the number and nature of prior accidents necessary to impute constructive notice to

MOA, are questions properly directed to the fact finder on remand. We therefore conclude that Kelly has raised a genuine issue of material fact concerning whether MOA had constructive notice of the open valve box.

## IV. CONCLUSION

Because genuine issues of material fact exist as to whether MOA caused the dangerous condition that injured Kelly, and as to whether it had constructive notice of this condition,[20] we REVERSE the superior court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.

**14.** 636 P.2d 47, 52 n. 5 (Alaska 1981).

**15.** *Id.* at 52 (emphasis added).

**16.** *Id.* ("Notice is also a permissible inference that the jury may draw where there is evidence of prior accidents caused by the asserted dangerous condition.").

**17.** *Id.* at 50; *see also id.* at 53 ("Eleven witnesses testified to falling sometime prior to Johnson's accident while riding a bicycle across the same spur crossing.").

**18.** *See City of Atlanta v. Williams,* 119 Ga.App. 353, 166 S.E.2d 896, 897 (1969) (raised manhole condition in place for approximately one year; notice inferred under Code Sec. 69–303); *Galbreath v. City of Logansport,* 151 Ind.App. 291, 279 N.E.2d 578, 580–81 (1972) (photographs and testimony showed sidewalk defect existed for a "long period of time"; referred back to jury to

determine if this constituted notice); *Peters v. State,* 400 Mich. 50, 252 N.W.2d 799, 804 (1977) (roadway flooding observed approximately three times per year over six years); *James v. Metro. Gov't of Nashville & Davidson Cnty.,* 55 Tenn. App. 622, 404 S.W.2d 249, 252 (1966) (evidence that defective condition of meter box existed "for a considerable length of time" is a jury question).

**19.** Again, MOA does not dispute that Lyons "stepped into the very same hole approximately a week prior to Ms. Kelly's incident...."

**20.** Granting summary judgment to either party is therefore inappropriate. For this reason, the superior court did not err in denying Kelly's cross-motion for summary judgment. We also note that since we conclude there are genuine issues of material fact regarding causation and constructive notice, we do not need to decide whether a factual question exists on the issue of actual notice.