*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WILLIAM MILLS, KAREN MILLS, ANNETTE McLAUGHLIN, and CAROLE WELSH, | ) ) ) ) | Supreme Court No. S-14041 |
| Appellants, | ) ) | |
| v. | ) ) | Superior Court No. 1JU-09-00466 CI |
| JEFFERSON HANKLA and the CITY OF HOONAH, | ) ) ) ) | O P I N I O N |
| Appellees. | ) ) ) | No. 6765 - March 22, 2013 |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Douglas K. Mertz and William F. Cummings, Mertz Law Offices, Juneau, for Appellants. Leslie Longenbaugh, Margot Knuth, and Janice Gregg Levy, Longenbaugh Law Firm, Juneau, for Appellees.

Before: Carpeneti, Chief Justice, Winfree and Stowers, Justices. [Fabe, Justice, not participating.]

WINFREE, Justice.

## I. INTRODUCTION

In 2008 a city promoted a police officer to police chief. The city's hiring determination and the officer's subsequent conduct led four police department employees to sue the police chief and the city. The employees asserted several claims including

wrongful termination, sexual harassment, and negligent hiring.  The superior court entered summary judgment in favor of the police chief and the city on all claims.

The employees appeal several of the superior court's summary judgment rulings, its denial of sanctions for evidence spoliation, and an attorney's fees award in the city's favor.  Because there are no genuine issues of material fact barring judgment, we affirm the superior court's dismissal of both the employees' hostile work environment sexual harassment claims against the police chief and the employees' negligent hiring claim against the city.  Because the superior court did not abuse its discretion in denying discovery sanctions, we affirm that ruling as well.  But because genuine issues of material fact preclude summary judgment as to the employees' claims against the city for wrongful termination and sexual harassment, we reverse those rulings, vacate the attorney's fees award, and remand for further proceedings.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

#### 1.  Chief Hankla

In 2006 the City of Hoonah (the City) hired Jefferson Hankla as a patrol officer with the Hoonah Police Department.  In early 2008 Hankla applied for an open position as police chief.  The city council appointed Hankla as police chief in February, but later was informed by Hankla's colleague, Lieutenant William Mills, that Hankla did not meet the eligibility requirements for the position, making the appointment a violation of city code.  The mayor rescinded the appointment; the city council then amended the city code to allow Hankla to qualify and re-opened the position.  Lt. Mills had not applied for the position when it was first advertised, but he applied when the position re-opened.  In April, the city council again appointed Hankla as police chief.

#### 2.  Chief Hankla and Lt. Mills

Following Chief Hankla's second appointment, relations between Chief

Hankla and Lt. Mills broke down. According to the employees, tension developed within the police department between those who supported Chief Hankla and those who did not. Lt. Mills and Chief Hankla avoided each other at work. Lt. Mills claimed Chief Hankla filed false reports concerning Lt. Mills's work and foreshadowed a termination by talking about "an opening" in the department. When the police department hired a new officer, Chief Hankla trained the new employee even though Lt. Mills was the department's training officer. Lt. Mills claimed Chief Hankla favored others within the department in various ways, including having personal driveways plowed by the city, allowing an employee to come to work drunk, allotting more overtime work, and arranging rent-free city housing. Lt. Mills claimed those disfavored by Chief Hankla "were subjected to humiliation and high-handedness, intended to drive [them] away."

In late April, three weeks after Chief Hankla's appointment, someone contacted Lt. Mills about an opening with the Craig Police Department. Lt. Mills applied, was offered the position, and accepted the next day. Lt. Mills gave three weeks notice of his resignation and left Hoonah in late May.

### 3.    Chief Hankla and dispatcher Welsh

Carole Welsh was hired as the Hoonah Police Department's dispatcher in 2006. Welsh claimed that throughout her employment before Chief Hankla's appointment, then-patrol-officer Hankla repeatedly asked to see her breasts, and that she always refused. She claimed that these requests were only made when the two were alone, and that she never told anyone. Shortly after Chief Hankla's appointment, Welsh's husband accepted a job in Washington and the family relocated. On her final day of work, "as [her] shift ended," she entered Chief Hankla's office to have him sign her time card. Welsh claimed that during this encounter, Chief Hankla requested one final time to see her breasts. Again, Welsh refused.

### 4. Chief Hankla and dispatchers Mills and McLaughlin

Karen Mills and Annette McLaughlin were dispatchers with the Hoonah Police Department while Chief Hankla was in charge. Both Mills and McLaughlin claimed they observed Chief Hankla behave inappropriately or make sexual comments. They claimed Chief Hankla reduced their hours and altered their time cards to deny them overtime pay. They also claimed Chief Hankla sent sexually inappropriate emails to members of the police department.

McLaughlin claimed that while she was working, Chief Hankla once saw her accidentally open an email containing pictures of topless women. She claimed Chief Hankla told her "if [she] wanted to [she] could take some pictures of [her]self topless and send them to his email." McLaughlin also described arriving late for a party at Chief Hankla's house and explaining that she came directly from the shower — she claimed that he replied, "If you're naked, come on in." McLaughlin further claimed Chief Hankla commented on the clothes she wore to work and she was aware of crude comments Chief Hankla made to other employees.

Mills described several instances that she claimed "show a pattern of sexual harassment." Mills claimed after Chief Hankla returned to the police station following a fire call near another female dispatcher's home, Chief Hankla told the dispatcher, in Mills's presence, that "he had looked over to [the dispatcher's] house, hoping to see her standing in her front window wearing something 'small and see-through.'" She claimed she heard Chief Hankla joke that he was going to purchase new dispatcher uniforms from Victoria's Secret. She also described one occasion when Chief Hankla approached her from behind to get a stapler and put his hand on her back.

### B.   Proceedings

#### 1.   The employees' suit

Lt. Mills and dispatchers Mills, McLaughlin, and Welsh sued Chief Hankla and the City on several theories. The scope of the employees' amended complaint caused some contention between the parties, with confusion about the actual claims pleaded. The following claims are specifically enumerated in the employees' amended complaint and are the subject of this appeal.

Lt. Mills claimed that Chief Hankla, and therefore the City, constructively discharged Lt. Mills through "harassment and unprofessional treatment," thereby breaching the covenant of good faith and fair dealing. Lt. Mills claimed that the City improperly refused to consider other candidates and hired Chief Hankla in violation of the city code, and further that Chief Hankla and the City violated public policy by retaliating against Lt. Mills for competing with Chief Hankla for the police chief position. The three dispatchers claimed Chief Hankla and the City maintained a hostile work environment through sexual harassment and discrimination in violation of AS 18.80.220(a).[1] Mills and McLaughlin also claimed Chief Hankla and the City violated wage and overtime laws by altering time cards and denying overtime pay. Lt. Mills and the three dispatchers further claimed the City was negligent in hiring, training, and retaining Chief Hankla.

#### 2.   The employees' motion for sanctions

The employees moved for sanctions against Chief Hankla and the City for

---

[1]     AS 18.80.220(a) makes it unlawful for an employer "to discriminate against a person in compensation or in a term, condition, or privilege of employment . . . because of the person's age, physical or mental disability, sex, marital status, changes in marital status, pregnancy, or parenthood when the reasonable demands of the position do not require distinction . . . ."

spoliation of evidence. The employees alleged Chief Hankla and the City failed to turn over two pieces of evidence: Chief Hankla's police department personnel file and former Hoonah Mayor Alf Skaflestad's citizen complaints file. The employees pointed to testimony from the previous police chief describing Chief Hankla's personnel file, including performance and psychological evaluations, medical file, and discipline record. The employees claimed that they did not receive the personnel file and that it was reasonable to conclude Chief Hankla had destroyed it. The employees also pointed to testimony from Skaflestad describing a file of complaints against Chief Hankla "several inches" thick and kept in a "secret" drawer in Skaflestad's desk. Claiming they did not receive the complete file, the employees argued it must have been destroyed. The employees requested sanctions, including exclusion of evidence and shifting the burden of proof. Chief Hankla and the City asserted they had produced both files and argued the allegedly destroyed or withheld evidence was irrelevant. The court denied the motion for sanctions, finding no evidence of destruction or failure to produce evidence.

### 3. Chief Hankla and the City's motion to exclude expert testimony and allegedly new claims

Chief Hankla and the City moved to exclude Welsh's and Lt. Mills's expert testimony and reports on economic damages and to exclude evidence relating to claims not pleaded, including Welsh's wrongful termination and retaliation claims. Chief Hankla and the City argued that the expert testimony and reports were prejudicially late and that the deadline to amend pleadings had passed.

The employees responded that both sides had caused the delay in submitting expert testimony and reports. Welsh also argued that her claim for economic damages was based on (1) being compelled, as a result of Chief Hankla's harassment, to leave her position at the police department and (2) a later poor performance review from Chief Hankla that prevented her from acquiring new work. Welsh argued that

Chief Hankla and the City were aware that she sought economic damages and that although the amended complaint did not specifically reference constructive termination or retaliation, Chief Hankla and the City "ha[d] done discovery and litigated with knowledge of [the claims]."

The superior court granted the motion to exclude Welsh's wrongful constructive discharge and retaliation claims and to preclude Welsh's and Lt. Mills's expert testimony. The court recognized a plaintiff does not have to plead a separate cause of action for constructive discharge to receive economic damages, but found Welsh had not indicated she was pursuing economic damages until the last day of discovery and did not itemize her damages until two weeks before trial. The court further concluded it was not clear from the pleadings that Welsh was asserting a retaliation claim.

### 4.    Motion for summary judgment

Chief Hankla and the City moved for summary judgment on all of the employees' claims. The superior court granted summary judgment in favor of Chief Hankla and the City on all but one claim, concluding that only Welsh's sexual harassment claim presented a genuine issue of material fact. The court explained that an issue of fact existed whether Welsh was still employed by the City when Chief Hankla allegedly made his final request to see Welsh's breasts, the only alleged request made while he was police chief. The court also concluded that if the City could be liable, then Chief Hankla could be personally liable under the aiding and abetting provision of AS 18.80.260.[2]

As to Lt. Mills's wrongful constructive discharge claim, the court noted that Lt. Mills did not appear to contest summary judgment. The court explained that Chief Hankla and the City had made a prima facie showing that there was no material issue of

---

[2]    AS 18.80.260 provides, "It is unlawful for a person to aid, abet, incite, compel, or coerce the doing of an act forbidden under this chapter or to attempt to do so."

fact as to the constructive discharge element of the claim, and entered summary judgment in their favor without considering whether there was sufficient evidence to support a claim for breach of the covenant of good faith and fair dealing. As to Lt. Mills's claim of retaliation against public policy for exercising his right to seek public employment, the court entered summary judgment because "[Lt. Mills] provid[ed] no authority whatsoever for the existence of the tort . . . nor [was] the court aware of any case in which [that] tort has been recognized."

As to Mills's and McLaughlin's sexual harassment claims, the court concluded Chief Hankla's alleged conduct was not "sufficiently severe or pervasive to alter the conditions of the victim[s'] employment," and could not amount to a hostile work environment in violation of AS 18.80.220. Additionally, as to Mills's and McLaughlin's claims against the City for denial of overtime wages, the court explained that the Alaska Wage and Hour Act[3] under which the employees brought their claim did not apply to subdivisions of the state, including the City. Although Mills and McLaughlin argued that alterations of time cards and denial of overtime amounted to violations of federal law and the Hoonah code, to discriminatory treatment, and to breach of the covenant of good faith and fair dealing, the court concluded that none of those "hypothetical causes of action" had been pleaded and declined to consider the theories.

As to the negligent hiring, training, and retention claims against the City, the court concluded the claims were precluded by discretionary function immunity under AS 09.65.070.[4] With respect to negligent training, the court explained it was "unaware

---

[3]     AS 23.10.050-.150.

[4]     AS 09.65.070(d) provides, "An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . . is based upon the exercise or performance or the failure to exercise or perform a discretionary
(continued...)

of authority for the proposition that there is an independent cause of action for 'negligent training,' " but noted it may be relevant to the remaining sexual harassment claim.

### 5. Chief Hankla and the City's motion for reconsideration

Chief Hankla and the City moved for reconsideration of the denial of summary judgment on Welsh's sexual harassment claim. They pointed to portions of Welsh's affidavit, deposition testimony, and interrogatory responses which they asserted showed that Chief Hankla's only alleged request to see her breasts while he was police chief occurred after Welsh had left the City's employment. At a status hearing, the court granted the reconsideration motion and entered summary judgment against Welsh on this final claim. Welsh protested the ruling, concerned that it precluded a common law claim for intentional infliction of emotional distress. The court responded that Welsh had not pleaded intentional infliction of emotional distress.

### 6. Offers of judgment and fee awards

Shortly before discovery closed, Chief Hankla and the City tendered Alaska Civil Rule 68 offers of judgment of $2,000 each to Lt. Mills and dispatchers Mills and McLaughlin, and $4,000 to dispatcher Welsh. The employees did not accept these offers, and following dismissal of all of the employees' claims by way of summary judgment, Chief Hankla and the City moved for Rule 68 attorney's fees. The employees opposed, arguing that the Rule 68 offers were invalid because they would have left the employees with no net recovery. The superior court rejected the employees' argument and granted the motion in full, holding the employees jointly and severally liable for Rule 68 fees and costs in excess of $100,000.

---

**4**     (...continued)
function . . . ."

### 7. Appeal

On appeal the employees challenge the superior court's denial of discovery sanctions, grant of summary judgment, and entry of attorney's fees.

## III. DISCUSSION

### A. Discovery Sanctions

The employees argue that the superior court erred in denying their request for discovery sanctions for spoliation of evidence.[5] "We review a superior court's rulings on discovery issues for abuse of discretion."[6] We review a trial court's findings of fact underlying its discovery sanction determination for clear error and "will not declare a trial court's finding to be clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made."[7]

The employees claim that the City withheld documents from Chief Hankla's personnel file, including a psychological evaluation, performance evaluations, medical files, a file of citizen complaints, and a disciplinary record. They note that the previous police chief referred to those documents as part of Chief Hankla's personnel file. The employees also argue that the City withheld former Mayor Skaflestad's file of complaints until shortly before the then-scheduled trial.

---

[5] *See Doubleday v. State, Commercial Fisheries Entry Comm'n*, 238 P.3d 100, 106 (Alaska 2010) (explaining party claiming spoliation to gain evidentiary presumption must demonstrate missing records hindered the party's ability to establish prima facie case and adverse party either intentionally or negligently destroyed or withheld records).

[6] *Wooten v. Hinton*, 202 P.3d 1148, 1155 (Alaska 2009).

[7] *Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision*, 902 P.2d 766, 776 (Alaska 1995) (internal citations omitted).

As to Chief Hankla's personnel file, the superior court recognized that the previous police chief referred to documents not in the personnel file turned over to the employees, but the court concluded that the discrepancy was not sufficient to establish spoliation and that it was not clear the documents were relevant. City Clerk Marlene Duvall stated that the entirety of Chief Hankla's file was turned over to the City's attorney. She noted that personnel files were under her supervision and control and that city policy provided no employees, including the police chief, were to keep separate personnel files. She also stated that psychological evaluations were not kept in the personnel files. Given the lack of evidence indicating destruction or withholding, we conclude that it was not clearly erroneous to find no spoliation and that it was not an abuse of discretion for the superior court to deny sanctions regarding Chief Hankla's personnel file.

As to Skaflestad's complaints file, early in the litigation the City obtained Skaflestad's files and turned over all non-privileged documents to the employees. Skaflestad later stated that he had continued to add to his file. Upon learning of these additions, the City requested a copy of the expanded file and subsequently gave a copy to the employees. The City's attorney stated that she did not know about Skaflestad's late additions until the spoliation claim arose, and the employees presented no evidence showing otherwise. The superior court's finding that there was no spoliation was not clearly erroneous, and in light of that finding it did not abuse its discretion in denying sanctions regarding Skaflestad's file.

### B.     Summary Judgment

We review a grant of summary judgment de novo[8] to "determine whether

---

[8]     *Yost v. State, Div. of Corps., Bus. & Prof'l Licensing*, 234 P.3d 1264, 1272 (Alaska 2010).

any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[9] "[W]e construe the facts in the light most favorable to the non-moving party . . . ."[10]

### 1.    Lt. Mills's wrongful termination claim against the City

Lt. Mills challenges the superior court's entry of summary judgment on his wrongful termination claim.  To prevail on a wrongful termination claim, an employee must prove (1) the employee was terminated by his or her employer and (2) the employer breached a contract or committed a tort in connection with the termination.[11] "Constructive discharge satisfies the first element; a breach of the implied covenant of good faith and fair dealing satisfies the second."[12]

"Constructive discharge occurs where an employer makes working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign."[13]  The employee must show that he or she was "forced into an involuntary resignation."[14]  Constructive discharge may result from a "sustained

---

[9]      *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

[10]      *McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001).

[11]      *Okpik v. City of Barrow*, 230 P.3d 672, 679 (Alaska 2010) (quoting *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002)).

[12]      *Id.* (citations omitted).

[13]      *Pyramid Printing Co. v. Alaska State Comm'n for Human Rights*, 153 P.3d 994, 999 (Alaska 2007) (quoting *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1994)) (internal quotation marks omitted).

[14]      *Beard v. Baum*, 796 P.2d 1344, 1350 (Alaska 1990).

campaign" of harassment.[15]  For example, in *Cameron v. Beard* the employee presented evidence that the employer had campaigned to vote him out of his position as union representative; submitted unjustified negative job performance evaluations; stated he would never be promoted; and warned that he was about to be fired.[16]  We held those facts were sufficient to support a jury's constructive discharge finding.[17]  Similarly, in *Finch v. Greatland Foods, Inc.* the employee alleged that the employer criticized him for taking family leave; reassigned his distribution route to a junior employee; altered the pay system such that only his income dropped; and failed to support his customer service efforts.[18]  Any of the events alone might not have supported a constructive discharge claim, and the employer submitted strong evidence controverting the alleged events.[19]  But when reviewing summary judgment we view the events "in totality and in the light most favorable to [the employee],"[20] and in that light, we held the events could lead a reasonable person in the employee's position to conclude that the employer pursued a sustained campaign of harassment, compelling the employee's resignation.[21]

Viewing the facts of this case in totality and in the light most favorable to Lt. Mills, there is a genuine issue of material fact whether Chief Hankla and the City

---

[15]    *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1285-86 (Alaska 2001) (quoting *Cameron*, 864 P.2d at 547).

[16]    864 P.2d at 540-41, 548.

[17]    *Id.* at 548.

[18]    21 P.3d at 1286.

[19]    *Id.*

[20]    *Id.*

[21]    *Id.*

engaged in a sustained campaign of harassment, leaving Lt. Mills no reasonable choice but to leave. Although we agree with Chief Hankla and the City that merely believing one's supervisor is critical or incompetent does not create intolerable working conditions,[22] Lt. Mills asserted more. Lt. Mills claimed Chief Hankla made it known that Lt. Mills was an "enemy"; filed false reports concerning his work; removed his training duties; and foreshadowed a termination by talking about "an opening" in the department. And given the testimony regarding the City's favorable treatment of Chief Hankla — including amending the city code to make him eligible to become police chief and not responding to complaints lodged against him — a reasonable jury could conclude Lt. Mills had a well-founded belief the City was not likely to protect him from the harassment, thereby compelling his resignation.

The fact that Lt. Mills left the police department for another job does not preclude a constructive discharge claim. Lt. Mills asserted he did not plan on leaving the department and explained, "I would not have left Hoonah if I thought I had a choice." In the light most favorable to Lt. Mills, the fact that his departure was for a position elsewhere does not require us to conclude he did not reasonably feel compelled to leave.

As to the second element of a wrongful termination claim — a tort or breach of contract connected with the termination — we conclude that Lt. Mills raised a genuine issue of material fact concerning a breach of the implied covenant of good faith and fair dealing. We have explained that "[t]he covenant operates as a check on employers' traditional freedom to terminate at-will employment for any reason" and

---

[22]     *See Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 790 (Alaska 2002) ("[C]riticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions . . . ." (quoting *Cameron*, 864 P.2d at 547)).

contains subjective and objective components.[23] The objective component "requires employers to act in a manner that a reasonable person would regard as fair."[24] The subjective component is breached if the employer "discharges the employee for the purpose of depriving him or her of one of the benefits of the contract."[25] "[G]enerally whether the covenant has been breached is a question for the trier of fact."[26]

In *Finch*, where there was sufficient evidence to support a claim of constructive discharge through a sustained campaign of harassment, we explained that it "follow[ed] that [there was] sufficient evidence to overcome summary judgment on [the] breach of covenant."[27] The same is true here. Lt. Mills asserted that he had been subjected to "a campaign of hostility and retaliation" from the time Chief Hankla "declared [Lt. Mills] an enemy and began cutting back on [his] duties and in other ways trying to drive [him] out." Taking the asserted events in the light most favorable to Lt. Mills, there are genuine issues of material fact whether Chief Hankla's and the City's alleged "harassment and unprofessional treatment" were objectively unfair or were subjectively intended to deprive Lt. Mills of the benefits of his employment.

Chief Hankla and the City argue that Lt. Mills did not address his wrongful termination claim in the opposition to summary judgment. Although the employees'

---

[23] *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 356 (Alaska 2011) (quoting *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999)).

[24] *Id.* (quoting *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002)) (internal quotation marks omitted).

[25] *Id.* (internal quotation marks omitted).

[26] *Okpik v. City of Barrow*, 230 P.3d 672, 681 (Alaska 2010) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003)).

[27] 21 P.3d 1282, 1286 (Alaska 2001).

group opposition had Lt. Mills's affidavit attached, the opposition's only assertion supporting Lt. Mills's claim is the broad statement that "it is evident that there is substantial evidence to support the allegations in the complaint, and that the defenses raised by the defendants are not adequate to defeat the claims as a matter of law."

Rule 56(e) provides that a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," but must "set forth facts showing that there is a genuine issue for trial." For this claim the facts were set forth but not well presented to the superior court — nonetheless, because there is sufficient evidence to raise a genuine issue of material fact as to Lt. Mills's wrongful termination claim, summary judgment is not appropriate.

### 2. Lt. Mills's retaliation claim against the City

We affirm the superior court's grant of summary judgment dismissing Lt. Mills's claim against the City for retaliation against public policy for exercising his right to seek public employment. The superior court correctly noted that Lt. Mills "provid[ed] no authority whatsoever for the existence of the tort of retaliation for unsuccessfully applying for public employment." Lt. Mills attempts to substantiate the claim on appeal. Lt. Mills argues that Chief Hankla retaliated against him for speaking out against Chief Hankla's candidacy and competing for the position. Lt. Mills now asserts that the retaliation was a violation of both the federal and state constitutions. But Lt. Mills did not raise either theory before the superior court. We therefore do not address the merits of the constitutional arguments on appeal.[28]

---

[28] "[T]he parties cannot . . . advance new theories or raise new issues in order to secure a reversal of the lower court's determination." *Williams v. City of Valdez*, 603 P.2d 483, 488 n.15 (Alaska 1979) (quoting 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2716, at 435-36 (1973 & 1978 Supp.)).

### 3. The dispatchers' sexual harassment claims against the City

Dispatchers Welsh, Mills, and McLaughlin challenge the superior court's grant of summary judgment dismissing their sexual harassment claims against the City. They argue that the City can be liable under AS 18.20.220(a),[29] a provision of what is referred to as the Alaska Human Rights Act (AHRA),[30] for hostile work environment caused by sexual harassment. We apply our independent judgment to issues of statutory interpretation and application, which present questions of law.[31] When interpreting a statute, we "look to the meaning of the language, the legislative history, and the purpose of the statute and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[32]

#### a. Welsh's sexual harassment claim against the City

In granting summary judgment dismissing Welsh's claim, the superior court concluded that the City could not be liable under the AHRA for Chief Hankla's conduct. The court reasoned that an employer's liability is limited to acts of supervisors, not coworkers, and that Chief Hankla was not Welsh's supervisor during the alleged acts of sexual harassment. Although we agree that the law limits employer liability to the acts of supervisors, we disagree with the court's determination that there was no genuine

---

[29]     AS 18.80.220(a) ("[I]t is unlawful for an employer . . . to discriminate against a person . . . because of the person's age, physical or mental disability, sex, marital status, changes in marital status, pregnancy, or parenthood . . . .").

[30]     *See, e.g.*, *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008) (referring to AS 18.80.010-.300 as the Alaska Human Rights Act).

[31]     *Mat-Su Valley Med. Ctr., LLC v. Advanced Pain Ctrs. of Alaska, Inc.*, 218 P.3d 698, 700 (Alaska 2009) (citing *State v. Jeffery*, 170 P.3d 226, 229 (Alaska 2007)).

[32]     *Id.* at 700-01 (quoting *Enders v. Parker*, 66 P.3d 11, 13-14 (Alaska 2003)).

issue of material fact regarding Chief Hankla's status as a supervisor. We therefore reverse the summary judgment dismissal of Welsh's AHRA claim against the City.

An employee must establish two elements to hold an employer liable for a hostile work environment: (1) the employee experienced "discriminatory behavior sufficiently severe or pervasive to alter the conditions of the victim's employment";[33] and (2) the discriminatory conduct can be imputed to the employer.[34] The employer's duty to prevent sexual harassment depends on the relationship between the harassing employee and the victim — an employer can be vicariously liable either for harassment by the victim's supervisor or for failing to remedy known harassment by coworkers.[35]

The City does not dispute that a genuine issue of material fact exists with respect to the discriminatory nature of Chief Hankla's behavior. The City contends, however, that Chief Hankla was never Welsh's supervisor when the objectionable behavior occurred. According to the City, then-patrol-officer Hankla was merely Welsh's coworker, and the single incident of harassment while he was police chief occurred when Welsh was no longer an employee. There are genuine issues of material fact as to both propositions.

In *VECO, Inc. v. Rosebrock* we concluded that an individual with the power to fire, discipline, sanction, and affect the terms or conditions of an employee's employment was a supervisor.[36] But we have had little opportunity to consider the outer limits of what constitutes a supervisory role. We look to similar federal cases under Title

---

[33]     *French v. Jadon, Inc.*, 911 P.2d 20, 28 (Alaska 1996).

[34]     *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 916-17 (Alaska 1999).

[35]     *See id.* at 915.

[36]     *Id.* at 916-17.

VII of the Civil Rights Act of 1964 for guidance.[37] These cases fall into two camps: those following the narrow view that a supervisor is one who has been entrusted with the actual authority to make tangible employment decisions, such as the authority "to hire, fire, demote, promote, transfer, or discipline an employee";[38] and those following a broader view that includes one with "authority to direct the employee's daily work activities"[39] and encompasses liability for apparent authority where the victim mistakenly but reasonably believed the harassing employee was a supervisor.[40]

We find the broader view persuasive. In *VECO* we explained that "vicarious liability may . . . be imposed based on apparent authority or where an employee is aided in accomplishing a tort by the employee's position with the employer."[41] We echoed that "it is precisely because the supervisor is understood to be

---

[37] *See id.* at 912-13 (citing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)); *see also Ellison v. Plumbers & Steam Fitters Union Local 375*, 118 P.3d 1070, 1074 (Alaska 2005) (citing *Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 490 (Alaska 1980)).

[38] *See Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998).

[39] *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 126-27 (2d Cir. 2003) (rejecting narrow view applied by courts following *Parkins*) (quoting EEOC Employer Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, 8 Fair Emp. Prac. Man. (BNA) 405:7654 (1999)).

[40] *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) ("If, in the unusual case, it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one."); *see also* EEOC, *supra* note 39 at 405:7655 ("[A]n employer may be subject to vicarious liability for harassment by a supervisor who does not have actual authority over the employee . . . if the employee reasonably believed that the harasser had such power.").

[41] *VECO*, 970 P.2d at 911 & n.8 (citing RESTATEMENT (SECOND) OF AGENCY

(continued...)

clothed with the employer's authority that [the supervisor] is able to impose unwelcome sexual conduct on subordinates."[42] Thus, we focus on whether the employer enabled the harassing employee to hold himself or herself out as having authority over the victim. When an employer has clothed an employee with the appearance of authority, it has facilitated that employee's harassing behavior and may be held vicariously liable.

For example, the Second Circuit applied this broader view in *Mack v. Otis Elevator Co.*[43] There the allegedly harassing employee was titled "mechanic in charge" and had authority to "assign and schedule work, direct the work force, assure the quality and efficiency of the assignment, and . . . enforce the safety practice and procedures."[44] Though the employee did not have the marks of actual authority necessary under the narrower view, the Second Circuit held that the employee was a supervisor because the employee "direct[ed] the particulars of each of [the victim's] work days, including [the victim's] work assignment, [and was] the senior employee on the work site."[45] Those factors gave the employee "a special dominance over other on-site employees."[46] The court explained that vicarious liability was not premised solely on whether the employee could take tangible employment actions impacting a subordinate, but on "whether the

---

[41]     (...continued)
§ 219(2)(d) (1957)); *see also Burlington Indus., Inc.*, 524 U.S. at 760, 763-65 (analyzing apparent authority and aided in agency theories in context of hostile environment claim).

[42]     *VECO*, 970 P.2d at 913 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 76-77 (1986) (Marshall, J., concurring)).

[43]     326 F.3d at 125-28.

[44]     *Id*. at 120.

[45]     *Id*. at 125.

[46]     *Id.*

authority given by the employer to the employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates."[47]

Here, there is a genuine issue of material fact whether Chief Hankla had that dominance when he was a patrol officer. Though as a patrol officer Hankla could not unilaterally hire, fire, promote, or discipline Welsh, Welsh presented two pieces of evidence demonstrating that she reasonably believed he had the authority to materially affect her employment. First, Welsh stated the former police chief solicited input from the patrol officers for Welsh's performance evaluations and as a patrol officer Hankla could have given Welsh a negative review, possibly impacting her employment. When an individual's recommendation is given substantial weight, that individual has some of the marks of a supervisor.[48] Second, Welsh stated dispatchers were trained "that all officers were considered [their] supervisors." While the City is correct that an employee's unreasonable subjective belief about a coworker's authority would not defeat summary judgment, the City has not established as a matter of law that Welsh's belief was unreasonable.

There also is a genuine issue of material fact whether Welsh was still employed by the City when Chief Hankla asked to see her breasts while he was acting as police chief. It is unclear from Welsh's affidavit whether she actually had ended her employment with the City before Chief Hankla made his remark — her statements indicate she entered Chief Hankla's office "as [her] shift ended" to have Chief Hankla sign her timecard. Drawing all reasonable inferences in Welsh's favor, there is a genuine issue of material fact whether getting Chief Hankla's signature on her time card at the end of her final work day was part of her duties as an employee.

---

[47] *Id*. at 126.

[48] *See* EEOC, *supra* note 39.

### b. Mills's and McLaughlin's sexual harassment claims against the City

We next consider whether the superior court erred in granting summary judgment dismissing Mills's and McLaughlin's sexual harassment claims. While it is undisputed that Chief Hankla was their supervisor when the alleged objectionable behavior occurred, the City argues that Chief Hankla's behavior did not create a hostile work environment. In *French v. Jadon, Inc.* we held that "discriminatory behavior sufficiently severe or pervasive to alter the conditions of the victim's employment and to create a discriminatory hostile work environment violates AS 18.80.220."[49] We adopted the United States Supreme Court's two-prong standard from *Harris v. Forklift Systems, Inc.*:[50] "the challenged conduct must be severe or pervasive enough 'to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive,' " but "there is no violation 'if the victim does not subjectively perceive the environment to be abusive' because the conduct 'has not actually altered the conditions of the victim's employment.' "[51]

Although it is a close call, there is a genuine issue of material fact whether Chief Hankla's behavior towards dispatchers Mills and McLaughlin created a hostile work environment. Both asserted they witnessed and were victims of inappropriate jokes and overtly sexual statements. McLaughlin stated that after Chief Hankla saw her accidentally open an email at work containing pictures of topless women, he told her "if [she] wanted to [she] could take some pictures of [her]self topless and send them to his email." McLaughlin also claimed that when she arrived late for a party at Chief Hankla's

---

[49]    911 P.2d 20, 28 (Alaska 1996).

[50]    510 U.S. 17, 21-22 (1993).

[51]    *French*, 911 P.2d at 28-29 (quoting *Harris*, 510 U.S. at 21-22).

house, she apologized, stating that she had come directly from the shower, to which he replied, "If you're naked, come on in." Mills alleged she overheard Chief Hankla make several inappropriate sexual jokes about the dispatchers, such as that he was planning to purchase new dispatcher uniforms from Victoria's Secret and that he had looked towards another dispatcher's house while responding to a nearby fire call hoping to "see her standing in her front window wearing something 'small and see-through.'" Mills also claimed that on one occasion when Chief Hankla approached her from behind to get a stapler from her desk, he put his hand on her back. Both dispatchers were aware that Chief Hankla emailed some members of the department "pornographic and off-color photos." From these assertions, a reasonable jury could conclude that Chief Hankla's harassing behavior created a hostile work environment, and it was error to dismiss the claim on summary judgment.

Some jurisdictions have precluded vicarious liability for supervisor harassment when the employer exercised reasonable care to prevent and promptly correct harassing behavior and the victim unreasonably failed to take advantage of any preventive or corrective opportunities or to otherwise avoid harm.[52] But even if we were to allow that defense, the City cannot establish that there is no genuine dispute whether it met these elements. Mills stated that the employee handbook containing the City's sexual harassment policy was not distributed to new employees. Further, even if the City had a policy on sexual harassment, Chief Hankla's own deposition testimony demonstrates that the City provided insufficient training regarding the policy: Chief Hankla stated he had "been taught" that conduct does not constitute sexual harassment unless the victim objects and the conduct continues. We therefore do not need to consider now whether to allow this defense to hostile work environment claims.

---

[52] *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

### 4. The dispatchers' sexual harassment claims against Chief Hankla

Welsh, Mills, and McLaughlin challenge the superior court's entry of summary judgment dismissing their sexual harassment claims against Chief Hankla. In their amended complaint the dispatchers alleged that Chief Hankla's behavior created a hostile environment "constitut[ing] sexual harassment and discrimination, causing pain, humiliation, suffering, and physical and emotional loss . . . in violation of [AS] 18.80.220(a)." The superior court read the complaint to allege only a claim under the AHRA. Although the court concluded Chief Hankla could be liable under the AHRA for aiding and abetting hostile environment sexual discrimination by the City, the court ultimately dismissed the AHRA claims against the City, precluding aiding and abetting liability. On appeal, the dispatchers argue that the AHRA allows a claim against the harassing employee and further argue that their claims survive on theories of public policy tort and intentional infliction of emotional distress.

### a. Chief Hankla's liability under the AHRA

The employees argue that AS 18.80.270 allows individual employees to be liable for hostile work environment sexual discrimination. We disagree. Subsection .270 creates liability for persons who willfully engage in "an unlawful discriminatory practice prohibited by this chapter." The statute prohibits "persons" from committing a variety of acts,[53] but prohibits employment discrimination only when committed by "an employer."[54] Subsection .300(5) defines an employer as "a person, including the state and a political subdivision of the state, who has one or more employees in the state." Chief Hankla plainly does not meet this definition. We will not read subsection .270 as

---

[53]    AS 18.80.270; AS 18.80.220(a)(6).

[54]    AS 18.80.220(a)(1).

providing grounds to find a person who is not an employer liable for employment discrimination.

The statute also does not evince any intention to create employee liability for hostile work environment sexual harassment. Subsection .200 provides that "it is the policy of the state and the purpose of this chapter to eliminate and prevent discrimination in employment." To effectuate this purpose, the AHRA prohibits certain forms of discrimination by employers, employment agencies, and unions,[55] and prohibits individual discrimination in the form of printing, publishing, broadcasting, or otherwise circulating material that impermissibly discriminates with regard to prospective employment.[56] In drafting the statute, the legislature contemplated personal liability for certain acts and employer liability for others.[57] Had the legislature wanted to establish personal liability for sexually inappropriate workplace behavior, as alleged against Chief Hankla, the legislature could have done so. Instead, the legislature left employees with common law remedies against harassing employees. We therefore affirm the entry of summary judgment dismissing Welsh's, Mills's, and McLaughlin's AHRA claims against Chief Hankla.

We note too that an employee may not be liable under the AHRA for aiding and abetting an employer when the discriminating employee's own conduct is what gives rise to the employer's liability. In *Ellison v. Plumbers & Steam Fitters Union Local 375*, we explained that under AS 18.80.260 "aiding and abetting liability occurs when the actor 'knows that the other's conduct constitutes a breach of duty and gives substantial

---

[55]     *See* AS 18.80.220(a)(1)-(5).

[56]     *See* AS 18.80.220(a)(6).

[57]     *Compare* AS 18.80.220(a)(6), *with* AS 18.80.220(a)(1), (3)-(5).

assistance or encouragement to the other.' "[58] We do not believe the legislature intended to use the aiding and abetting provision to hold employees directly liable for their discrimination. Given the otherwise clear terms of the statute, we will not assume that on the critically important issue of individual liability the legislature decided not to use similarly clear language. We decline to hold that the legislature "intended to accomplish a result so significant by a method so abstruse."[59]

### b. Chief Hankla's common law liability

The dispatchers argue that even if Chief Hankla cannot be liable under the AHRA, he still can be liable for sexual harrassment under common law theories of public policy tort or intentional infliction of emotional distress. But the record is not clear that the dispatchers raised these theories before the superior court.

The dispatchers did not expressly mention these theories in their amended complaint, which alleged "sexual harassment and discrimination, causing pain, humiliation, suffering, and physical and emotional loss . . . in violation of [AS] 18.80.220(a)." The dispatchers only referenced the theories in their opposition to summary judgment to rebut an argument that the AHRA shields the harassing employee. The dispatchers asserted that harassing employees are not protected both because of the language of the AHRA and because "[s]exual harassment is a well-recognized common law tort . . . [that] may take the form of a common law claim based on assault, on intentional infliction of emotional distress, on interference with contract . . ., and as a public policy tort" (emphasis omitted). But they did not argue that they relied on those theories in their claims against Chief Hankla. Welsh expressly asserted an intentional

---

[58]     118 P.3d 1070, 1077 (Alaska 2005) (quoting RESTATEMENT (SECOND) OF TORTS § 876 (1979)).

[59]     *Reno v. Baird*, 957 P.2d 1333, 1342 (Cal. 1998).

infliction of emotional distress claim, but only at a status hearing three days before the scheduled trial date. The superior court concluded that Welsh's intentional infliction of emotional distress claim had not been pleaded and declined to allow trial to proceed on that claim.

We have explained that "as a general rule, appellate review is precluded where questions which appellants denominate as triable issues of fact were not presented to the [trial court]."[60] Because it is not clear that the claims of public policy tort or intentional infliction of emotional distress were expressly before the superior court, and because the superior court did not rule on the merits of these claims, we decline to consider the merits of the claims on appeal. But because we are reversing summary judgment dismissing the dispatchers' sexual harassment claims against the City, the dispatchers may move to amend their complaint to include their common law claims against Chief Hankla.[61] Rule 15(a) "commands that leave [to amend] is to be freely granted when justice so requires."[62]

### 5.     Employees' negligent hiring claim against the City

The employees challenge the superior court's entry of summary judgment dismissing their negligent hiring claim against the City.[63] The superior court concluded

---

[60]     *Williams v. City of Valdez*, 603 P.2d 483, 488 (Alaska 1979) (internal quotation marks omitted).

[61]     *See J&S Servs., Inc. v. Tomter*, 139 P.3d 544, 550 n.25 (Alaska 2006) ("Amendment to the pleadings may be proper on remand." (citing *Swift v. Kniffen*, 706 P.2d 296, 305 n.11 (Alaska 1985))).

[62]     *Id.* (citing *Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 590-91 (Alaska 2002)).

[63]     The employees also pleaded claims for negligent retention and training, but on appeal they do not challenge summary judgment on those claims.

that the employees' claim for negligent hiring is precluded by discretionary function official immunity under AS 09.65.070(d)(2). Because we agree the City is immune from liability for its hiring decision, we affirm the entry of summary judgment dismissing this claim.

Alaska Statute 09.65.070(d)(2) immunizes municipalities from civil liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents . . . whether or not the discretion involved is abused." We have explained that this statute "expresses a type of official immunity," protecting municipalities from liability for discretionary actions.[64] We have defined discretionary actions as "those that require personal deliberation, decision and judgment,"[65] and have contrasted them with ministerial acts "amounting only to obedience of orders, or the performance of a duty in which the officer is left with no choice of his [or her] own."[66] The discretionary function immunity expressed in this statute is qualified, meaning "a public official is shielded from liability only when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt."[67]

The City's decision appointing Chief Hankla was a discretionary action immunized by AS 09.65.070(d)(2). The employees concede that "selecting a person for a particular municipal post involves discretion." But they argue that investigating

---

[64]   *Pauley v. Anchorage Sch. Dist.*, 31 P.3d 1284, 1285 (Alaska 2001).

[65]   *Id.* (quoting *Samaniego v. City of Kodiak*, 2 P.3d 78, 83 (Alaska 2000)) (internal quotation marks omitted).

[66]   *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 155 (Alaska 1987) (quoting *State v. Haley*, 687 P.2d 305, 316 (Alaska 1984)) (internal quotation marks omitted).

[67]   *Pauley*, 31 P.3d at 1286 (quoting *Aspen*, 739 P.2d at 158).

candidates before hiring — by, for example, conducting a background check — is such a "basic step[] that any responsible municipality would take before making a decision," that it cannot be considered a discretionary act. We do not find the distinction persuasive. The evaluation of potential employees, the factors relied on in that evaluation, and the decision to hire a particular individual from an applicant pool all require the City to act with "deliberation, decision and judgment."[68] The City's hiring determination therefore falls within the protection of discretionary function official immunity.

Although official immunity for discretionary functions is qualified,[69] there is no factual basis to suggest the hiring determination was malicious, corrupt, or otherwise not conducted in good faith. As the parties moving for summary judgment, Chief Hankla and the City had the initial burden of demonstrating there was no material issue of fact as to the City's good faith motive.[70] Though Chief Hankla and the City did not directly argue the question of good faith, they did challenge the merits of the negligent hiring claim. They argued that "the record clearly documents the City's commitment to act properly." Chief Hankla and the City point to the following: (1) a newsletter from the City disclosing that the first appointment of Chief Hankla violated the city code and discussing the council's decision to amend the code; (2) a report from the city administrator recommending the council "duly consider [Lt.] Mills'[s] application and approve an appointment they feel is appropriate"; (3) minutes from a

---

[68]     *Id.* at 1285 (quoting *Samaniego*, 2 P.3d at 83).

[69]     *Id.* at 1286.

[70]     *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012) ("The moving party has the initial burden of showing by admissible evidence that there is an absence of genuine factual disputes and that it is entitled to judgment as a matter of law.").

council meeting indicating that "[t]here was discussion regarding the two candidates" before unanimously voting to appoint Chief Hankla; (4) a letter, written after Chief Hankla's appointment, notifying the Alaska Police Standards Council that the City received information about Chief Hankla's alleged arrest for battery in a different state; (5) correspondence with the City's attorney regarding actions the City could take in response to concerns about Chief Hankla continuing as police chief; (6) a written reprimand Chief Hankla was given; and (7) City correspondence regarding suspending Chief Hankla. This evidence indicates good faith deliberation prior to appointing Chief Hankla and responsiveness to problems that arose after his appointment.

The employees had the burden of demonstrating the existence of a genuine issue of material fact on that question,[71] but raised nothing more than suspicions. The employees argued that in amending the city code to make Hankla eligible to be police chief, the City was "motivated by the decision to have a new chief who would not enforce the liquor laws vigorously and would not arrest Council members and their relatives." While this allegation may point to conduct that is not in good faith, the employees may not "rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact."[72]

The employees supported their argument with affidavit testimony from Lt. Mills that he knew "for a fact that the council wanted Hankla as chief . . . so as to be easier on themselves." Lt. Mills asserted that he had arrested a council member, that he had been present at the arrest of another, and that the department arrested several relatives of council members, while Chief Hankla "made only one arrest during his entire

---

[71]     *See id.*

[72]     *Id.* (quoting *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005)).

time in Hoonah and generally had a 'get along' attitude that the council members preferred." We "do not weigh evidence or witness credibility on summary judgment,"[73] but for affidavit testimony to raise a genuine issue of material fact it must "be made on personal knowledge, . . . set forth facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein."[74] Lt. Mills may have had personal knowledge of the number of arrests Chief Hankla conducted, but those facts are not indicative of the City's motive for appointing him as police chief. There is no indication Lt. Mills actually had personal knowledge that the city council appointed Chief Hankla to reduce arrests of council members and their families. Because Lt. Mills's assertion was not based on personal knowledge, it is not sufficient to raise a genuine issue of material fact that the hiring determination was malicious, corrupt, or otherwise not in good faith.[75] We affirm the superior court's determination that the City's hiring decision is protected by discretionary function official immunity.

### 6. Other claims

The employees raise several theories on appeal that they did not clearly raise before the superior court, including breach of the covenant of good faith and fair dealing as to dispatchers Welsh, Mills, and McLaughlin; retaliation as to Mills and

---

[73] *Kelly*, 270 P.3d at 804.

[74] Alaska R. Civ. P. 56(e); *see also Nat'l Indem. Co. v. Flesher*, 469 P.2d 360, 368 (Alaska 1970).

[75] *Cf. Kelly*, 270 P.3d at 804 (concluding that injured party seeing workers in yellow vests in general area of accident is not personal knowledge to support assertion that municipal workers caused accident); *French v. Jadon*, 911 P.2d 20, 25-27 (Alaska 1996) (concluding employee's "unsupported suppositions" that she was fired for not dating manager's brother or for not participating in "unethical and illegal" activities did not raise genuine issue of material fact of bad faith termination).

McLaughlin; wrongful constructive termination and retaliation as to Welsh; and intentional infliction of emotional distress as to all the employees.

Because it is not clear from the record that these claims were raised before the superior court, and because the superior court did not rule on them, we decline to consider their merits. And because we are reversing the entry of summary judgment denying other claims by the employees, we do not need to address the superior court's decision to exclude what it considered to be unpleaded claims raised late in discovery. On remand the employees may file a motion with the superior court to amend their pleadings to include these claims.[76]

## C.     Attorney's Fees

Because we remand several claims for further proceedings, including possible pleading amendments for additional claims, prevailing party status is undetermined and we vacate the superior court's judgment awarding attorney's fees against the employees. We do not need to determine at this time whether Chief Hankla and the City's offer of judgment was valid under Rule 68.[77] We note, however, that it was error to impose an award of attorney's fees jointly and severally.

In *Hughes v. Foster Wheeler Co.* we recognized that parties could be made jointly and severally liable where "the same issue [is] involved in each claim." In *Hughes*, 30 merchant mariners filed similar complaints against shipowners and asbestos

---

[76]     *J&S Servs., Inc. v. Tomter*, 139 P.3d 544, 550 n.25 (Alaska 2006) (citing *Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 590-91 (Alaska 2002); *Swift v. Kniffen*, 706 P.2d 296, 305 n.11 (Alaska 1985)).

[77]     *See Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1288-90 (Alaska 2010) (analyzing validity of nominal Rule 68 offer made at the outset of the case after affirming dismissal of lawsuit); *see also Beal v. McGuire*, 216 P.3d 1154, 1177-78 (Alaska 2009) (reversing entry of Rule 68 attorney's fees where offers were "effectively zero in what appear[ed] to be a good faith dispute").

manufacturers alleging personal injury and wrongful death claims.[78] These cases were consolidated for the "purposes of hearing [the defendants'] motion to dismiss on [the grounds of] forum non conveniens."[79] The superior court granted the motion to dismiss and held the merchant mariners jointly and severally liable for costs and attorney's fees.[80] We affirmed because the claims all concerned the "same issue" of whether to dismiss under forum non conveniens.[81]

The same is not true here. Of the eight counts in the amended complaint, only two counts applied to all four of the employees. (The two counts are misuse of public property and negligent hiring, retention, and training. Only the negligent hiring count is at issue on appeal.) It was therefore error to hold the employees jointly and severally liable for fees. If after remand the superior court awards attorney's fees to Chief Hankla and the City, it should make findings allocating the fees among the employees.

V.    CONCLUSION

We REVERSE the summary judgment ruling dismissing Welsh's, Mills's, and McLaughlin's hostile work environment sexual harassment claims against the City and dismissing Lt. Mills's wrongful discharge claim against the City and REMAND for further proceedings. We VACATE the judgment and its award of costs and attorney's fees. The superior court's decision is otherwise AFFIRMED.

---

[78]    *Id.* at 786.

[79]    *Id.*

[80]    *Id.*

[81]    *Id.* at 792; *see also Stepanov v. Gavrilovich*, 594 P.2d 30, 36 (Alaska 1979) (upholding joint and several liability for attorney's fee award because plaintiffs' claims "concerned the same issue" where contractors sued subdivider for damage to homes due to undisclosed permafrost melting).